HENRY LAWRENCE *v.* STATE OF INDIANA.

[No. 677S419.  Filed May 3, 1978.]

*John F. Surbeck, Jr.,* Deputy Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction for armed robbery, Ind. Code § 35-12-1-1 (Burns 1975) and inflicting injury in a robbery, Ind. Code § 35-13-4-6 (Burns 1975) both repealed October 1, 1977. A twenty year term for the robbery and a term of life imprisonment for inflicting the injury resulted.

The issues presented are:

(1) Whether the trial court erred in failing to suppress items of evidence taken from an auto during an allegedly illegal stop.

(2) Whether the court erred in refusing appellant's tendered instructions upon lesser included offenses.

(3)   Whether there is evidence sufficient to support the conviction for inflicting injury.

(4)   Whether the sentence imposed is excessive and constitutes cruel and unusual punishment.

On July 15, 1975 at 1:45 a.m. the Speedway Cafe near a bypass on the outskirts of Fort Wayne was robbed by two armed men who took money from customers and a black tool box containing money from the bartender. Two customers were struck on the head with a pistol held by one of the men.

## I.

Items, including a black tool box, money and store receipts taken in the robbery, were admitted at trial over objection and following the denial of appellant's motion to suppress them on Fourth Amendment grounds. They were taken by the police from a car in which appellant was a passenger. The car was stopped on a street in Fort Wayne by Sgt. Spearman of that city's police department shortly after the robbery. The burden was on the State at the hearing and in reviewing the ruling we consider the evidence adduced favorable to the ruling and any uncontraverted facts.

The Fourth Amendment provides security of one's person and effects against arbitrary intrusion by the police and bars the use of evidence secured through an illegal search or seizure even though such evidence is logically relevant and essential to conviction. *Mapp* v. *Ohio,* (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Wolf* v. *Colorado,* (1949) 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. One does not forfeit that protection by entering an automobile; an automobile itself is an "effect" within the meaning of that term in the amendment. *Cady* v. *Dombrowski,* (1973) 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706; *Idol* v. *State,* (1954) 233 Ind. 307, 119 N.E.2d 428. When the police stop an automobile being operated on a public street and subject

its occupants to a pat search or frisk, an intrusion into the privacy of those persons has occurred which implicates the Fourth Amendment and requires justification. *United States* v. *Brignoni-Ponce*, (1975) 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607.

In no case can an intrusion upon privacy by the police be justified by a hunch, whim or mere suspicion, and in most cases the essential justification by police is probable cause. Recently the United States Supreme Court and thereafter this Court have permitted the State to justify an intrusion which is less than a traditional arrest and which is limited in time and scope and which occurs in the fluidity of street events, namely, the investigatory stop, upon less than probable cause. *Terry* v. *Ohio*, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Almeida-Sanchez* v. *United States*, (1973) 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed. 2d 596; *State* v. *Smithers*, (1971) 256 Ind. 512, 269 N.E.2d 874; *Luckett* v. *State*, (1972) 259 Ind. 174, 284 N.E.2d 738. Under these cases, in order to support the stop of a car, the facts known to the police at the time they stopped the car must be examined. If such facts would warrant a man of reasonable caution in believing the action taken was appropriate, the command of the Fourth Amendment is satisfied. *State* v. *Smithers, supra.* Appellant contends that such facts were not present in this case.

The circumstances of the stop of the car and the discovery of the items sought to be suppressed are the following. At the time the robbery was taking place Sgt. Spearman was patrolling four miles away in the center of the city. At 2:00 a.m. he received the following radio dispatch:

> "Dispatcher. For the attention of all units enroute to the Code 53, which is a robbery, two male blacks, one subject to be about six foot, heavy dark clothing, correction, be heavy dark jacket, six four, heavy dark jacket, about thirty-five years of age and mustache, thirty-five years of age and mustached; number two subject be twenty-eight years of age, five ten, a hundred and sixty pounds, twenty-eight

years of age, five ten, a hundred and sixty pounds, Code 62 with a hand gun, which is the subject is armed with a hand gun. Also at this time there will possibly be a third subject." [sic]

He also heard other cars calling off separate streets leading to town from the direction of the robbery. No information describing an escape vehicle was received and indeed no information that a car had been used in the robbery.

The sergeant took a position near Wells Street which is described as the most direct main route from the cafe to the downtown. Testimony placed the cafe ten minutes from the downtown via that route during the early morning hours.

At 2:07 a.m. the sergeant sighted a car coming down the street from the direction of the cafe. It was being operated in a normal, lawful fashion. He observed two black males in the front seat wearing dark clothing; one appeared tall as he sat high in the car; one had a mustache. The car was pulled over to the side of the street and the occupants were ordered out. They were then subjected to a pat search, the operator's license of the driver was examined and they were told of the robbery dispatch which formed the reason for the stop.

According to the passenger, Percy Pinkston who testified at the suppression hearing, they were then told that they were free to go. Further, according to Pinkston, as he returned to the passenger side door, someone "scrambled" around inside the trunk of the car. According to the sergeant he was engaged in examining the rear of the car with his flashlight when he sighted a human arm through a one-inch gap created by an upward bend in the edge of the trunk lid by the use of his flashlight, and heard someone move around inside the trunk. He called out a warning to fellow officers who had arrived in the meantime, and then yelled to the person in the trunk to get out. The person tried to get out but could not because although the trunk lid was severely damaged the latch nevertheless was fastened. The sergeant got the trunk key from the driver Ernest Bell and opened it, whereupon appel-

lant Lawrence emerged from the compartment which was strewn with money and contained the black box containing money and receipts from the Speedway Cafe. Appellant had considerable money stuffed in his sock.

In *Luckett*, a state patrolman was located on U.S. Highway 41 south of the small town of Princeton when he received a communication that suspects in a burglary in Princeton were riding in a green Chevrolet bearing a license plate with prefix "82 J." At a point in time thirty minutes after the time of the crime he stopped a green Oldsmobile containing three persons bearing a license plate with prefix "82 J." This occurred in the early evening hours. The officer did not require the occupants to alight, but while standing outside the car waiting for the driver to produce an operator's license, trained his flashlight on the backseat and observed items meeting the description of items stolen in the burglary which had been described in the dispatch. We held that while the patrolman had no probable cause before observing the stolen articles, he was nevertheless justified in his conduct up to that moment and that no constitutional violation occurred.

In the case before us one of the men partially met the description because he appeared tall and had a mustache. Both occupants wore dark clothes as had been indicated. While there is no car description or partial license number here, as in *Luckett*, the element of time is present and serves to increase the reasonableness of the investigative stop in two ways. While the exact time of the crime was not given in the dispatch an experienced officer would nevertheless be able to make a fairly accurate assessment of the time elapsed between the time of the crime and the time of the dispatch and therefore the time elapsed between the time of the crime and the sighting of the car. That assessment could be based upon knowing the type of crime, the location of the robbery and the time it ordinarily takes such crimes to be reported to the police and information about them to be relayed over the radio. The time elapsed between

the crime and the sighting by Sgt. Spearman increased the probability to an appreciable degree that the car carried the suspects, upon the hypothesis that if the suspects left the crime scene in a car they would have reached the point of sighting at about the time they were in fact sighted there. The time of day also increased that probability in that fewer cars are on the street at that time in the morning. We, therefore, find that there was sufficient evidence to support the trial court's determination that the facts known to Sgt. Spearman from the dispatch and his own observations would warrant a man of reasonable caution in believing the action he took in initially stopping the car in which appellant was riding was appropriate.

As part of this same contention, appellant also argues that the scope of the investigatory stop was unreasonably extended to include the examination of the rear of the automobile and the opening of the trunk after the frisk of the occupants and the conversation with them was concluded. Appellant relies upon *Madison* v. *State,* (1976) Ind. App., 357 N.E.2d 911, in which the police inquired into the well-being of a person sleeping in a parked car in a park at 9:00 a.m., and were told by that person that he was alright, after which the police inappropriately continued the investigation. Here, unlike the *Madison* case, the officer had been informed that the suspects being sought were armed and dangerous, and given the validity of the initial stop was therefore justified in conducting a limited search for weapons in order to protect himself and others. *Adams* v. *Williams,* (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Collett* v. *State,* (1975) 167 Ind. App. 185, 338 N.E.2d 286.

The time elapsing between the initial stop and the opening of the trunk was a very few minutes. The examination of the trunk lid and rear end of the car by the officer came at the conclusion of investigation and according to the witness Pinkston as they were being told that they were free to go. Thus this look around did not ex-

tend the period of detention for more than a few moments, and appears to be part of the process of recording external characteristics of the car for identification purposes. When at this point the officer heard someone in the trunk, he was still close to the car and could have reasonably perceived himself to be in danger from an armed person in the trunk who might quickly emerge or shoot at him through the opening in the trunk lid. Based upon the facts considered above forming the basis for the initial stop and the newly discovered fact that the person was in the trunk, the officer was warranted for his own safety in requiring the trunk to be opened and its occupant to get out of the car.

There was therefore no impermissible extension of the scope of the investigative stop and the items discovered were admissible against appellant at trial.

## II.

At present the law governing the trial court in its decision whether to instruct upon lesser included offenses embodies two separate steps. The first of these is to examine the two statutes creating the alleged greater and lesser offenses and the charging information or indictment and to determine therefrom whether "a conviction of the crime charged necessitates proof of all the essential elements of the lesser offense, together with the added element which makes the difference in the two offenses." *Watford* v. *State,* (1957) 237 Ind. 10, 143 N.E.2d 405. If such added element does not exist or such proof is not necessitated, the additional test is not satisfied and an instruction regarding such lesser offense should in no case be given. Here appellant's proposed instruction on aggravated assault and battery as a lesser and included offense of inflicting an injury in the course of robbery was properly refused upon application of this traditional test because proof of a "great bodily harm or disfigurement" required for aggravated assault and battery, Ind. Code § 35-13-3-1 (Burns 1975) repealed October 1, 1977,

was not necessary. The statute defining the crime of inflicting, Ind. Code § 35-13-4-6 requires only proof of a "wound or other physical injury", and the information charged only the infliction of "a physical injury."

Appellant also tendered and was refused instructions defining assault and battery and assault and battery with intent to commit a felony and these satisfy the first and traditional step set forth and applied in the foregoing paragraph. *Bewley* v. *State*, (1966) 247 Ind. 652, 220 N.E.2d 612; *Hazlett* v. *State*, (1951) 229 Ind. 577, 99 N.E.2d 743. Under present law, they are yet subject to the second and further step required by this Court in *Hash* v. *State*, (1972) 258 Ind. 692, 284 N.E.2d 770. There we held that an instruction upon a lesser and included offense is properly given if there is "evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense." The trial court is justified in finding the existence of such requisite evidence where upon careful review of the evidence produced to prove the element or elements differentiating the alleged greater and lesser offenses, the trial court concludes that such evidence has substantial probative value and is not in serious dispute. Should the jury return a verdict of guilty of the proposed lesser offense upon consideration of such evidence, their verdict could not but be the product of a compromise between jurors who believe the accused guilty of the offense charged and those who believe him not guilty thereof, which is the unacceptable result sought to be foreclosed by the *Hash* rule. *Hester* v. *State*, (1974) 262 Ind. 284, 315 N.E.2d 351.

Applying this further step taking this further step, we find that the elements of inflicting which distinguish it from assault and battery and assault and battery with intent to commit a felony to be (1) physical injury, (2) the use of a dangerous or deadly weapon, and (3) the taking of property. There was substantial evidence produced, and it is not seriously disputed that the men who

robbed the Speedway Cafe were armed with pistols, that physical injury was inflicted upon customers when they were struck with one of the pistols and that cash in a box was taken from the bartender. The evidence was not such as to warrant the lesser included offense instructions tendered by appellant and the trial court was correct in refusing them.

## III.

Appellant next contends that the evidence produced by the State was insufficient to support the verdict of the jury finding appellant guilty of inflicting an injury in the course of a robbery in that there was an insufficient showing of an "injury." The evidence on the point was presented in the main by Buck and Curly, two customers in the cafe. One of the men robbing the place struck both of them over the head with a pistol which he held in his hand. One such blow cut into the forehead and resulted in bleeding and a swelling revealed by one of the photographs in the record to be the size of a golf ball. This was evidence of substantial probative value from which the jury was justified in concluding beyond a reasonable doubt that an *injury* was inflicted in the course of the robbery. It is true as pointed out by appellant that these injuries did not require medical attention, but such fact does not serve here to render the value of the evidence of injury insufficient.

## IV.

Appellant contends that the sentence of life imprisonment is excessive, cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution and Article I, Section 16 of the Indiana Constitution. Where as here a sentence is challenged as being cruel and unusual because of its duration, we accord maximum deference to the legislative judgment which is the foundation for the sentence. We have recently upheld the sentence of life imprisonment for inflicting an injury in the

course of a robbery in *Thomas* v. *State,* (1976) 264 Ind. 581, 348 N.E.2d 4, against this same challenge. The convictions are affirmed.

Givan, C.J., Hunter and Pivarnik, JJ., concur; Prentice, J., concurs in result.

NOTE.—Reported at 375 N.E.2d 208.