**Phillip R. MAYFIELD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–579A120.

Court of Appeals of Indiana, Third District.

April 16, 1980.

Rehearing Denied June 4, 1980.

Terry E. Johnston, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Phillip R. Mayfield was charged and convicted of the crime of Theft.[1] He was a juvenile at the time the crime was committed. His trial was conducted in the Porter Superior Court after a petition for waiver from the Porter Juvenile Court had been granted.[2] Mayfield was sentenced to the Indiana Youth Center for a period of not less than one nor more than ten years. The court further recommended that Mayfield be held at the Indiana Youth Center for a period of not less than two years.

On appeal, Mayfield raises five issues for our consideration:

(1) Was there sufficient evidence to support the finding of the trial court?

(2) Was the stopping of the car in which he was riding reasonable in light of

1. IC 1971, 35–17–5–3(1)(a) (now repealed).

2. On June 21, 1977, a petition alleging the delinquency of Mayfield was filed in the Porter Juvenile Court. The prosecuting attorney filed a petition for waiver from Juvenile Court. On September 23, 1977, a hearing on the petition for waiver was conducted in Porter Juvenile Court and it was ordered that Mayfield should be waived to Porter Superior Court.

the facts known to the officer at the time of the stop?

(3) Did the failure of the police officer to provide him with an opportunity to confer with a parent prior to questioning render his incriminating statements inadmissible?

(4) Did this same failure render the identification testimony inadmissible?

(5) Was the trial court authorized to recommend that he spend two years at the Indiana Youth Center?

We affirm.

## I.

### Sufficiency of the Evidence

In considering sufficiency of the evidence, we may consider only that evidence most favorable to the State, together with all the logical and reasonable inferences to be drawn therefrom. *Jenkins v. State* (1978), 267 Ind. 543, 372 N.E.2d 166. This Court will neither weigh the evidence nor determine the credibility of the witnesses. *Jenkins, supra.* When there is substantial evidence of probative value supporting the judgment of the trial court, it will not be set aside. *Jones v. State* (1978), Ind., 377 N.E.2d 1349.

About 1:05 a. m., Mrs. Kandyce Napier was awakened by the sound of a loud car muffler. When she went to the window of her trailer, she saw three young men getting into an old, "greenish" station wagon with rust spots and a white bumper sticker on its bumper. They drove off in the car, but they did not leave the trailer park. Later, when Mrs. Napier had returned to bed, she heard a thump outside her trailer. She got out of bed and peered out the window again. She saw the same three young men gathered around her husband's motorcycle. One was seated on the cycle while the other two "were pushing the bike." The two pushed the motorcycle until it started and then, ran off to the south through a trailer park yard. Almost immediately, Mrs. Napier heard the sound of a loud car muffler. She telephoned the police to report the theft.

Several officers heard and responded to the police dispatch that a blue motorcycle had been stolen from the trailer park. One of the suspects was described as a male, having long brown hair and wearing a white shirt. The information in the dispatch also pointed to the involvement of a greenish-blue station wagon.

Within three minutes of hearing this report, Officer Green observed a blue motorcycle speeding on a highway near the trailer park. As he pulled off the highway to make a U-turn and give chase, he saw a blue station wagon. It was following about one-half mile behind the motorcycle. Officer Green caught up with the station wagon and stopped it. Mayfield, who had long brown hair and who was wearing a white shirt, was riding as passenger in the station wagon. He and his companion were asked to identify themselves and give an explanation as to their activities earlier in the evening. A search of the glove box failed to produce a registration to indicate the ownership of the station wagon. However, the police did find a utility bill and from the address on the utility bill they were able to locate the stolen motorcycle.

Mrs. Napier was brought to the scene of the traffic stop within 30 minutes after the commission of the crime. She was able to positively identify the station wagon and both its occupants as being involved in the theft of the motorcycle.

We conclude that the evidence is sufficient to support the judgment.

## II.

### Investigatory Stop

On appeal, Mayfield argues that Officer Green had no probable cause to stop the station wagon in which he was a passenger. *Citing Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and *Luckett v.*

*State* (1972), 259 Ind. 174, 284 N.E.2d 738, Mayfield correctly sets forth the following standard for the making of an investigatory stop:

"[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

392 U.S. at 21, 22, 88 S.Ct. 1880.

■ While we agree with his statement of the law, we are unable to accept his argument. Mayfield's contention that Officer Green failed to have even the "bare minimum of facts" to warrant an investigatory stop is merely an assertion, unsupported by the evidence. *See Patterson v. State* (1979), Ind., 386 N.E.2d 936, 939. In order to justify the stopping of a vehicle for further investigation, the information known to the police at the time of the stop must be examined. If the information would warrant a man of reasonable caution in believing that further investigation was appropriate, then the Fourth Amendment has not been violated.[3] *Lawrence v. State* (1978), Ind., 375 N.E.2d 208; *Mack v. State* (1978), Ind.App., 380 N.E.2d 592.

Mayfield suggests that "No longer may police officers lawfully detain vehicles and their occupants upon mere suspicion or for the mere purposes of investigating criminal activity unless probable cause for arrest exists." He relies upon *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, wherein the Court stated at 1401:

"Accordingly, we hold that *except in those situations in which there is at least articulable and reasonable suspicion* that a motorist is unlicensed or that an automobile is not registered, or *that either the vehicle or an occupant is otherwise subject to seizure for violation of law*, stopping an automobile and detaining the

driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. . . ." (Emphasis supplied.)

■ The station wagon in which Mayfield was a passenger was stopped by Officer Green in response to a police radio dispatch. The information known to Officer Green at the time of the stop indicated that a blue motorcycle had been stolen from the trailer park by three individuals. One of them was reported to have long brown hair and to be wearing a white shirt. Officer Green was also notified by radio that a greenish-blue station wagon was possibly involved.

Within three minutes of receiving this dispatch and approximately two miles from the trailer park, Officer Green saw a speeding blue motorcycle. One-half mile behind it was a greenish-blue station wagon. When Officer Green pulled behind the station wagon, he observed that the passenger had long brown hair and was wearing a white shirt. We conclude that the combined observations of a speeding blue motorcycle, a greenish-blue station wagon, and a long-haired passenger in the station wagon in the vicinity of the trailer park shortly after the commission of the crime, clearly provided Officer Green with an "articulable and reasonable suspicion" to make the investigatory stop.

Mayfield also claims that no evidence was offered to determine the reliability of the source of the police department's information. He contends that if Officer Green had probable cause to stop the station wagon, it was based upon unverified information provided by a third party and was, therefore, unreliable. *Citing Carson v. State* (1975), 164 Ind.App. 24, 326 N.E.2d 624, he argues that probable cause can only be established by showing the previously

3. The Fourth Amendment protects an individual and his effects from an arbitrary intrusion by the police. It bars the subsequent use of any evidence secured through an illegal search or

seizure even though such evidence is relevant and essential to the conviction. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Lawrence, supra.*

determined reliability of the third party or by verification of extrinsic facts which import reliability to the information.

 In making his argument, Mayfield has confused probable cause required to make an arrest with facts sufficient to warrant an investigatory stop. A police officer does not need to have probable cause to arrest in order to make an investigatory stop. *Zelmer v. State* (1978), Ind.App., 380 N.E.2d 618; *Bennett v. State* (1977), Ind. App., 369 N.E.2d 949. The police officer has no duty to determine the reliability of the information upon which he is relying to make an investigatory stop. He need only have sufficient information to warrant a reasonable belief that further investigation is appropriate. *Lawrence, supra*. Here, it is enough that the victim of the crime immediately notified the police department with detailed descriptions of the stolen motorcycle, the station wagon, and the three young men who committed the crime.[4] This information was sufficient to provide Officer Green with an "articulable and reasonable suspicion" to make the stop.

### III.

### Opportunity to Confer

Mayfield next finds fault with the police investigatory procedure. After the station wagon was stopped, Mayfield and his companion were separated and individually asked their identity and about their recent activities. Prior to any questioning, both were advised of their *Miranda* rights and both stated that they had understood these rights.[5] When it was pointed out to Mayfield that his explanation did not coincide with that of his companion, Mayfield told Officer Green that:

> "[H]e did not think he could tell me, as he was already on probation in our county and he was afraid to go back to Boys School."

Mayfield also told another police officer that:

> "[H]e had been in trouble before and there was really no valid reason for him wanting to talk to us now because it would just get him in deeper trouble and he would just go to Boys School. . . ."

Mayfield claims that the making of these statements, without benefit of a parent present, violates the holding in *Lewis v. State* (1972), 259 Ind. 418, 288 N.E.2d 138. He explains that an incriminating statement or a confession cannot be used against a juvenile at a subsequent trial or hearing unless both he and a parent were informed of his rights to an attorney and to remain silent. He further points out that a juvenile must be given an opportunity to consult with his parents, guardian or attorney as to whether he wishes to waive these rights.[6] *Lewis, supra*.

We note that the custodial situation in *Lewis* was far different than the one here. The juvenile in *Lewis* was known by police to be a juvenile at the time of questioning. Here, the police were unaware of Mayfield's juvenile status until he commented about the Boys' School. Without benefit of a parent present, the juvenile in *Lewis* was questioned at the station by several police officers at one time. After being shown a

---

4. The station wagon in which Mayfield was a passenger was stopped on the basis of the descriptions given by the victim of the crime. This information had been dispatched through police channels. In Indiana, the knowledge of the entire police force may be imputed to an arresting or searching officer. *State v. Mooney* (1979), Ind.App., 398 N.E.2d 698.

5. Despite Mayfield's contention to the contrary, Officer Green's giving of the *Miranda* rights is not an admission that this was the type of custodial interrogation envisioned in *Miranda*

v. *Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The State explains that Officer Green was merely following routine police procedure.

6. The advisement requirements of *Miranda, supra*, were applied to juveniles in *Lewis, supra*, with the setting forth of these guidelines. *See Lockridge v. State* (1975), Ind., 338 N.E.2d 275. *Also see* IC 1971, 31-6-7-2(a), effective October 1, 1979.

photograph of the victim, the juvenile confessed his involvement in the murder. In the case at bar, Mayfield was questioned by two officers, one at a time. This investigation was conducted in the open at the scene of the traffic stop. Mayfield was neither under arrest nor placed in handcuffs. We sympathize with the *Lewis* Court's concern for providing safeguards for a juvenile being questioned in a police-dominated atmosphere, "cut off from anything familiar or comforting to him." *Lewis, supra,* at 141. Such, however, was not the case here.

 Assuming *arguendo* that Mayfield's statements were "confessions" which were improperly obtained without benefit of a parent's presence, Mayfield still fails to persuade us of any harmful error. In reviewing a harmless error question, we must weigh the evidence, absent the tainted evidence. We are charged with determining whether, beyond a reasonable doubt, the finder of fact would have rendered a guilty judgment based solely upon the remaining untainted evidence. If a guilty judgment could have been rendered on the remaining evidence, the error is harmless. *Larimer v. State* (1975), 163 Ind.App. 673, 326 N.E.2d 277. Here, there is clearly a sufficient amount of "untainted" evidence for the trial court to have found Mayfield guilty.

## IV.

### Identification Testimony

 Mayfield also asks us to find that the police's failure to have his parent or an attorney present at the traffic stop renders the testimony concerning Mrs. Napier's identification of Mayfield and the station wagon inadmissible. Mayfield admits that, for an adult, the right to counsel does not attach until the judicial adversary proceedings have been initiated by the filing of an affidavit or an indictment. *Young v. State* (1979), Ind., 395 N.E.2d 772; *Winston v. State* (1975), 263 Ind. 8, 323 N.E.2d 228. Mayfield urges us to conclude that a juvenile should be provided with the assistance of a parent or counsel at a preindictment identification confrontation. He would have us reason by analogy to the Court in *Lewis, supra,* and, thereby, extend a juvenile's right of counsel and the presence of a parent to preindictment "corporeal identification proceedings." We decline to do so.

The United States Supreme Court in *In Re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, decided that there was no material difference with respect to the right to counsel, between an adult and a juvenile proceeding in which an adjudication of delinquency was being sought. It stated that where the proceeding involved a determination of delinquency, which may have resulted in the loss of a juvenile's liberty, the juvenile has a right to counsel. *In Re Gault, supra.*

Mayfield was provided counsel and the presence of a parent at every stage of the proceeding in juvenile court which resulted in his waiver to criminal court. The investigatory stop of the station wagon in which he was riding occurred prior to the filing of the petition for delinquency and prior to the filing of the information. This confrontation occurred long before either the onset of formal delinquency proceedings or the commencement of any prosecution. To quote the United States Supreme Court in *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411:

"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. . . .

\* \* \* \* \* \*

"We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever."

406 U.S. 690, 92 S.Ct. 1882–3. *See also Auer v. State* (1972), 154 Ind.App. 164, 289 N.E.2d 321.

## V.

### Sentencing

Finally, Mayfield questions the authority of the trial court to recommend that he be kept in custody by the Indiana Department of Correction for a minimum of two years. The judgment of the court is as follows:

"The Court is going to commit you to the custody of the Department of Corrections at the Indiana Youth Center for a period of one to ten years. The Court is going to recommend at least a minimum stay of two years within that. . . . "

Mayfield contends that, in making this recommendation, the court erroneously applied a sentencing provision not in effect at the time of the commission of the crime. IC 1971, 35–4.1–5–1.

■■■■ In Indiana, it is clear that crimes committed prior to October 1, 1977, the effective date of the new Penal Code, should be tried under the statute in force at the time the offense was committed. If the defendant is found guilty, he should then be sentenced under the statute in effect at that time. *Bonner v. State* (1979), Ind., 392 N.E.2d 1169; *State v. Palmer* (1979), Ind., 386 N.E.2d 946, 950.

The theft of the motorcycle occurred on May 16, 1977, prior to the effective date of the Penal Code. Mayfield was properly charged and convicted under the now repealed section involving theft, IC 1971, 35–17–5–3(1)(a). Although it was not set out with any specificity in the record,[7] the court apparently relied upon IC 1971, 35–17–5–12 (now repealed) in the sentencing. It provided:

"(3) A person convicted of theft of property of one hundred dollars [$100] or more in value shall be fined in any sum not exceeding five thousand dollars [$5,000] or imprisoned for not less than one [1] year nor more than ten [10] years, or both, and be disfranchised and ren-

dered incapable of holding any office of trust or profit for any determinate period."

Mayfield appears to argue that his sentence is both determinate and indeterminate in nature. If this were the case, such a sentence would be clearly in violation of IC 1971, 35–17–5–12. Nowhere in this section is the court authorized to impose a determinate as well as an indeterminate sentence.

Rather than characterize Mayfield's sentence in such a contrived fashion, we are persuaded that the Court's recommendation of "a minimum stay of two years" was merely a suggestion to the Department of Correction that he be held for this period of time. At the sentencing hearing, the State explained that the Indiana Youth Center would not accept Mayfield for any educational or vocational programs unless "he is to be with them for at least a year." It suggested that Mayfield be sentenced for a period of not less than one year nor more than ten years and also requested the court to recommend that Mayfield be held a minimum of two years to enable him to participate in the Center's rehabilitation program.

■■■■ The discretion to terminate the imprisonment of one serving an indeterminate sentence is not subject to the supervision or control of the courts. *Dowd v. Basham* (1954), 233 Ind. 207, 116 N.E.2d 632; *Terry v. Byers* (1903), 161 Ind. 360, 68 N.E. 596. This is a matter for the determination of the Department of Correction within the limits of the minimum and maximum terms of the sentence imposed. *Dowd, supra; Terry, supra.* We conclude that the trial court properly sentenced Mayfield for a period of not less than one year nor more than ten years and further conclude that its recommendation was merely a suggestion to the Department of Correction. The department may, within its discretion, choose to follow or ignore the suggestion.

7. It is unclear whether the court may have considered IC 1971, 35–8–3–1 (now repealed) in

sentencing Mayfield, a minor, to a term of not less than one year nor more than ten years.

We affirm the judgment of the trial court.

GARRARD, P. J., and HOFFMAN, J., concur.