**John T. SCHULTZ, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 1180S410.

Supreme Court of Indiana.

July 6, 1981.

Curtis B. Eskew, Corydon, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

A jury found John T. Schultz guilty of arson, a class A felony, Ind.Code § 35–43–1–1 (Burns 1979 Repl.) and involuntary manslaughter, a class C felony, Ind.Code § 35–42–1–4 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Corrections for consecutive terms of fifty and five years for his respective crimes. He presents the following issues for our review:

1. Whether the jury's conclusion that the arson was committed under circumstances which endangered human life was supported by sufficient evidence;

2. Whether the jury's verdict of guilty to involuntary manslaughter was supported by sufficient evidence or contrary to law; and

3. Whether the trial court abused its discretion in sentencing defendant to a period of fifty-five years.

The record reveals that on December 14, 1979, a 1970 Dodge Charger automobile was found burning on Tunnel Hill Road in Harrison County, Indiana. State Police were called; Trooper Jack Davis arrived and, among other things, recorded the vehicle's license plate numbers and observed a charred carcass in the backseat of the auto. Unable to determine whether the charred remains were animal or human, he summoned County Coroner Roger Royse to the scene.

Royse concluded from his examination that the carcass "possibly was human" and took the remains to the Anthropology Department at Indiana University. There, it was determined that the remains were those of a human. Royse then took the charred remains to Dr. John Pless, a forensic pathologist, who conducted an autopsy. Based on his examination, as well as the

consultation of Dr. Rosemary Alstott, a toxicologist, Pless concluded that the human had been alive at the time of the fire and had perished as a result of acute thermal injury.

Meanwhile, police had traced the ownership of the auto through the license plates to the defendant. Acting on that information, forensic pathologist Pless was supplied with copies of x-ray photographs previously taken of defendant's chest, spine, shoulder and various extremities. Dr. Pless compared defendant's x-rays with those taken of the deceased, and concluded that it was not the defendant who had perished in the automobile fire.

Informed of Dr. Pless's finding, police focused their investigation on the whereabouts of the defendant, who was eventually located and arrested in Phoenix, Arizona, and brought back to New Albany, Indiana. There, following an advisement of rights, defendant made a tape-recorded statement to police.

Therein, defendant explained that the events heretofore described represented the attempt of him and his business partner, Donald Labine, to defraud an insurance company. Defendant and Labine were joint owners and reciprocal beneficiaries of a life insurance policy, whereby each was insured for $200,000. Together, they "found somebody that was dead or we thought he was dead," dressed the body in defendant's clothes, and placed the body in the defendant's car. Defendant then called his wife and told her that he was in Louisville, Kentucky, that he was drunk, and that he was coming home. Following a time lapse appropriate for a journey from Louisville to Harrison County, Labine drove defendant's automobile to Tunnel Hill Road, doused the auto with gasoline, and ignited the fire which consumed the auto and the body therein. Meanwhile, defendant left for Phoenix where he was eventually apprehended.

Defendant's version of the events was corroborated by his wife, who testified that she received the phone call from Louisville, and by State Fire Marshal Investigator Charles McGuirk, who testified that the fire had been ignited through the use of an accelerant and that the gasoline tank had not exploded. In addition, business partner Robert Mullins stated that he had heard defendant mention "suicide" or finding "somebody that looked like him" so that his family might collect on the insurance policy. The record also reveals that the body found in the burning automobile has never been identified by medical authorities.

I.

Defendant contends that the evidence was insufficient to support the jury's verdict that the arson was committed under conditions that endangered human life and resulted in serious bodily injury. His contention is predicated on interrelated bases. First, he maintains that there was no evidence to indicate that the defendant knew the body of the deceased was alive at the time of the fire; consequently, he argues, the evidence is insufficient to support the conclusion that he committed arson under conditions which endangered human life. In addition, he maintains that the jury necessarily held a reasonable doubt regarding whether he knew the victim was alive, for it did not convict him of murder. The two verdicts are contradictory and irreconcilable, he asserts, and warrant corrective action under *Marsh v. State*, (1979) Ind., 393 N.E.2d 757.

It is well settled that when the sufficiency of the evidence is raised as an issue on appeal, this Court will not weigh the evidence nor judge the credibility of witnesses. Rather, we will examine only the evidence most favorable to the state, together with the reasonable inferences that can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion, it will not be set aside. *Moon v. State*, (1981) Ind., 419 N.E.2d 740; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776.

Both forensic pathologist Pless and toxicologist Alstott testified that at the time of the fire, the victim was alive. Their conclusions were based on the concentration of

carbon monoxide in the blood, which indicated that the victim was breathing prior to and during the fire. In addition, Pless noted that the position of the victim's arms, which were, unlike most victims of fire, constricted behind the back, indicated that the extremities had been bound.

Defendant's statements concerning the state of the body prior to its immolation belies his claim that he did not know whether the person was alive or dead. According to defendant, he and Labine "found a body" one night, lying "by the river, near some railroad tracks, cars, kind of under a overpass." Defendant stated that the body "was dead or we thought he was dead" but added that "I didn't touch it." Defendant emphasized at trial that he "didn't wanta hurt nobody" but admitted that he took no steps to insure the body was not that of an unconscious drunk. Finally, he conceded it was unusual to find a dead body lying open and unattended on the side of a road.

Whether the body was in fact alive or dead prior to the fire was a matter peculiarly within the knowledge of the defendant. As such, the jury was free to accept or reject his equivocal testimony that the body was dead; it is not our prerogative to disturb the jury's apparent rejection of defendant's testimony. *Moon v. State, supra; Henderson v. State, supra.* The evidence was sufficient to sustain the defendant's conviction for arson under circumstances which endangered human life and resulted in serious bodily injury.

These circumstances also would have justified a conviction for murder. Instead, however, the jury found the defendant guilty of involuntary manslaughter. Whether the jury's decision can be attributed to defendant's lack of active physical participation in the immolation of the body, as defendant maintains, or to his repeatedly stated belief or desire that the body was already dead, this Court cannot say with certainty. Regardless, we cannot overturn a verdict by "speculation or inquiry into [the motivation of the jury]." *Marsh v. State, supra,* at 762, quoting *Flowers v. State,* (1943) 221 Ind. 448, 450, 48 N.E.2d 56,

57. And while the jury's verdicts cannot be characterized as perfectly logical, neither is such extreme contradiction and irreconcilable conflict presented that corrective action is warranted. *Marsh v. State, supra; Abrams v. State,* (1980) Ind., 403 N.E.2d 345; *Owen v. State,* (1978) 269 Ind. 513, 381 N.E.2d 1235.

## II.

■ Defendant argues that his conviction for involuntary manslaughter was contrary to law and not supported by sufficient evidence. He predicates his argument on his allegation that the jury was never instructed as to what offenses might constitute a class C or D felony or a class A misdemeanor, as is required by the statute defining involuntary manslaughter. Ind.Code § 35–42–1–4, *supra.* Without these instructions, the jury's verdict could have only been based on speculation, he asserts, and should therefore be overturned.

Defendant has failed to tender to this Court the record of the instructions tendered, given, and refused at trial. His failure to present a record adequate to permit our review constitutes waiver. *Mendez v. State,* (1977) 267 Ind. 309, 370 N.E.2d 323; *State v. Bryant,* (1975) 167 Ind.App. 360, 338 N.E.2d 690. We note that defendant has also baldly asserted that he was not "charged" with the commission of a class C or D felony or class A misdemeanor. Those offenses were subsumed as elements of involuntary manslaughter, a lesser included offense of murder as it was alleged to have been committed in the charging instrument. *Lawrence v. State,* (1978) 268 Ind. 330, 375 N.E.2d 208; *Roddy v. State,* (1979) Ind. App., 394 N.E.2d 1098. The evidence was more than sufficient to support defendant's conviction for involuntary manslaughter.

## III.

■ Defendant also maintains that the trial court abused its discretion in sentencing defendant by failing to follow the guidelines set down in Ind.Code § 35–4.1–4–7 (Burns 1979 Repl.). Defendant asserts that the court imposed additional terms for

aggravating circumstances and ordered consecutive sentences in order to provide the state with leverage to force him to testify against his co-defendant Labine at a subsequent trial.

Defendant's contention is not supported by the record. At the sentencing hearing, the court stated that its sentence was based on the circumstances of the crime, including the "total callousness" toward human life as part and parcel of a conspiracy to defraud an insurance company. The trial court did not abuse its discretion under Ind.Code § 35–4.1–4–7, *supra*. *Inman v. State*, (1979) Ind., 393 N.E.2d 767.

For all the foregoing reasons, there was no trial court error and the judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.