**Garry G. REYNOLDS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 1182 S 410.**

Supreme Court of Indiana.

March 14, 1984.

Calvin K. Hubbell, Valparaiso, for appellant; W. Jonathan Forker, Valparaiso, of counsel.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

The Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and sentenced to forty (40) years imprisonment. His direct appeal raises four (4) issues for our review:

1. Whether the trial court committed reversible error when it communicated with a member of the jury during the jury deliberations;

2. Whether the trial court erred when it admitted into evidence ten (10) photographs of the deceased victim over the objection that they were highly inflammatory and served no purpose other than to prejudice the jury;

3. Whether the trial court erred in refusing to give the Defendant's tendered

final instructions advising that the crime of assisting a criminal was an offense of which Defendant could be found guilty;

4. Whether the evidence was sufficient to sustain the verdict.

## ISSUE I

While the jury was deliberating, and before it had reached a verdict, a member of the jury called the trial judge in his chambers from a telephone located in the jury room. The juror wanted to know why the State had not called a co-defendant to testify in this case. Without informing the Defendant or counsel and without calling the jury into open court, the trial judge instructed the inquiring juror that the State was not required to call the co-defendant as a witness, nor was the Defendant required to call him as a witness. After the jury had reached its verdict, but before it was announced, the attorneys and the Defendant were informed of the aforementioned communications. Defendant did not request a mistrial or, in any manner, indicate any dissatisfaction with the action of the trial judge.

We have consistently held that when the jury indicates that it has questions or problems during the course of its deliberations, the proper procedure is for the court to call the jury back into open court and, in the presence of all of the parties and their counsel, reread all of the final instructions given to them prior to their deliberations, without emphasis on any of them and without further comment. *Cornett v. State,* (1982) Ind., 436 N.E.2d 765, 766; *Crowdus v. State,* (1982) Ind., 431 N.E.2d 796, 798; *Wallace v. State,* (1981) Ind., 426 N.E.2d 34, 36; *Lewis v. State,* (1981) Ind., 424 N.E.2d 107, 111; *Cameron v. State,* (1979) 270 Ind. 185, 187, 383 N.E.2d 1039, 1041.

The trial court obviously did not adhere to the appropriate procedure, and Defendant argues that such action violated Indiana law and his constitutional right to be present at all stages of the criminal proceeding. We agree that the exchange was highly improper; however, we do not reach

that question, inasmuch as Defendant has failed to preserve error for appeal.

We have said many times that we cannot allow a party to permit a court's action to go unchallenged and then attempt to raise the court's action as error on appeal. *Gosnell v. State,* (1978) 268 Ind. 429, 431, 376 N.E.2d 471, 472; *Hensley v. State,* (1969) 251 Ind. 633, 639, 244 N.E.2d 225, 228. In *Dodson v. State,* (1978) 269 Ind. 380, 383, 381 N.E.2d 90, 93, Justice Pivarnik explained:

"Unless there is fundamental error, a defendant cannot be allowed to gamble on the possibility of a favorable verdict by sitting idly by, making no objection to matters he considers prejudicial, and then attempt to assert those matters as error after an unfavorable disposition of his case."

 An exception to the requirement of a timely in-trial objection occurs when the error is fundamental. *Malo v. State,* (1977) 266 Ind. 157, 162, 361 N.E.2d 1201, 1204. "Such errors have been variously described as a failure to meet the requirements of due process of law, gross error which offends our concept of criminal justice, and the denial of fundamental due process." *Nelson v. State,* (1980) 409 N.E.2d 637, 638 (citations omitted). In order to rise to the level of fundamental error the error must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively. *Id.; Phillips v. State,* (1978) 268 Ind. 556, 561, 376 N.E.2d 1143, 1146. But, the mere fact that the error complained of relates to a constitutional right does not, in and of itself, render it fundamental error requiring us to go against well established rules of procedure. *Nelson v. State,* 409 N.E.2d at 638; *Malo v. State,* 266 Ind. at 162, 361 N.E.2d at 1205.

In the case at bar, the error complained of was not fundamental. The circumstances of this case are similar to those of *Decker v. State,* (1979) 179 Ind.App. 472, 386 N.E.2d 192, wherein the court was

notified, during deliberations, that the jury had a question and sent an answer. About one hour later, in open court, the incident was discussed, the jury was told to redeliberate, and Decker did not move for a mistrial or request a hearing at that time. Our Court of Appeals there determined that "the error complained of was not so blatant that the Defendant was deprived 'of any realistic opportunity for a fair hearing.' " *Id.* at 495, 386 N.E.2d at 207.

In *Phillips v. State,* (1978) 268 Ind. 556, 561, 376 N.E.2d 1143, 1146, the assigned error was an indiscreet comment made by the court's bailiff to one of the jurors. No objection or motion for mistrial was made. This Court, while noting that such a communication was highly improper, found that the error complained of was not fundamental. "[A] reviewing court should be reluctant to invoke the rule of fundamental error, and will do so only when a blatant error has occurred which would, otherwise, deny a defendant fundamental due process." *Id.*

■ Defendant, not having complained of the error at a time when it could have been rectified by the trial court, prior to announcement of the verdict, and the error not being *fundamental,* may not assign it on appeal.

## ISSUE II

■ Defendant objected to the admission into evidence of various photographs of the homicide victim, arguing that they served no purpose other than to prejudice and influence the jury against the Defendant. The rule is that the admission of such photographs is not reversible error if they are relevant and the relevance is not clearly outweighed by a tendency to inflame or impassion the jury against the defense. *Webster v. State,* (1981) Ind., 426 N.E.2d 1295, 1297; *Brandon v. State,* (1978) 268 Ind. 150, 155, 374 N.E.2d 504, 507. The trial court has wide discretion in making such determination. *Dresser v. State,* (1983) Ind., 454 N.E.2d 406, 408; *Brandon v. State,* 268 Ind. at 155, 374 N.E.2d at 507; *Patterson v. State,* (1975) 263 Ind. 55, 61,

324 N.E.2d 482, 486. Absent an abuse of that discretion, we will not reverse a judgment upon an assignment addressed to the trial court's ruling upon such evidence.

■ In the case at bar, the first four photographs were relevant, inasmuch as they accurately depict the way the body looked as it was first observed in the creek. The other six photographs, taken at the autopsy, were relevant to show the nature and extent of the wounds the victim received. Although the pictures are unpleasant to view, it cannot be said that the potential of such evidence to inflame or impassion the jury against the defense clearly outweighed their relevance; hence, we will not disturb the trial court's ruling.

## ISSUE III

■ The Defendant assigns as error the trial court's refusal to give the following instruction:

## "DEFENDANT'S FINAL INSTRUCTION NO. 8

Under the facts and circumstances of this case if you find the Defendant not guilty of the crime of murder you must then consider whether or not the Defendant committed the crime of ASSISTING A CRIMINAL."

The Defendant argues that the instruction should have been given because assisting a criminal is a lesser included offense of murder and because evidence supported the giving of the instruction. The Defendant relies upon *Moore v. State,* (1983) Ind.App., 445 N.E.2d 576, 578 (*transfer denied*), in which the Court of Appeals stated that assisting a criminal is a lesser included offense of murder and attempted murder. The statement in *Moore,* however, is overly broad. Assisting a criminal is not, in every instance, a lesser included offense of murder.

Indiana employs a two step analysis for determining what constitutes lesser included offenses. *Lawrence v. State,* (1978) 268 Ind. 330, 337, 375 N.E.2d 208, 212; *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098,

1102–1113 (*rehearing denied*). The first step involves a determination of whether the lesser offense is included within the crime charged. Two types of included offenses are found in our case law. In *Roddy,* Judge Staton, writing for the Court of Appeals, characterized them as "inherently included" and "possibly included" offenses. The "inherently included" lesser offense exists when, by definition, it is impossible to commit the greater offense without committing the lesser offense. An offense is "possibly included" depending upon the manner and means allegedly employed in the commission of the charged crime. *Roddy v. State,* 394 N.E.2d at 1105–1106; *See also Jones v. State,* (1982) Ind., 438 N.E.2d 972, 974.

A determination of whether an offense is "inherently included" requires an examination of the relevant statutes which define the crimes. Murder is the knowing or intentional killing of another human being or the killing of another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery. Ind.Code § 35–42–1–1 (Burns 1979). Assisting a criminal is the harboring, concealment or otherwise assisting a person who has committed a crime or is a fugitive from justice, with the intent to hinder the apprehension or punishment of that person, by one who is neither parent, child, nor spouse to that person. Ind.Code § 35–44–3–2 (Burns 1979). It is obvious that one may commit murder without committing the crime of assisting a criminal; hence, assisting a criminal is not an "inherently included" lesser offense of murder.

■ We then turn to the question of whether assisting a criminal is a "possibly included" lesser offense of murder. Such a determination must be made on a case by case basis by examining the factual allegations of the charging instrument. If the elements of the lesser offense are alleged to have been committed in the charging instrument, the Defendant *may* be entitled to an instruction on the lesser included

offense. *Jones v. State,* 438 N.E.2d at 975; *Roddy v. State,* 394 N.E.2d at 1106.

■ In the case at bar, the charging information, omitting formal parts, was as follows:

"BARRY RUTHERFORD swears that BRIAN COOMBS AND GARRY REYNOLDS late of the County and State aforesaid, on or about the 1st day of October A.D. 1981 did then and there, at and in said County and State kill another human being, to wit: Mark R. Coombs, DOB: 9–11–62, while committing robbery, to-wit: by knowingly or intentionally taking United States currency from Mark R. Coombs by using force, then and there being contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The information did not allege any conduct by Defendant that would have comprised the offense of assisting a criminal. Assisting a criminal, then, is neither "inherently included" nor "possibly included" as a lesser included offense of murder in the case at bar, and the court properly refused Defendant's tendered instruction No. 8. In that we have determined that the offense is not included in the crime charged, we do not move to step two of the rationale and methodology outlined in *Lawrence v. State,* (1978) 268 Ind. 330, 375 N.E.2d 208 and *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098.

ISSUE IV

Finally, Defendant argues that the evidence was insufficient to sustain the verdict. We note our standard of review at the outset:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evi-

dence nor will we judge the credibility of the witnesses." (citations omitted). *Loyd v. State,* (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence most favorable to the State disclosed that the Defendant attended a party at the house of a friend, Jesse Walker, on September 30, 1981, in Portage, Indiana. At the party, the Defendant was introduced to the victim, Mark Coombs. During the course of the evening, the Defendant and seven others, including the victim, got into the Defendant's automobile and drove to Merrillville. While in Merrillville, four of the group separated from the others, leaving only the Defendant, Mark Coombs, Daniel Sandlin and Brian Coombs. On the return trip to Portage, the Defendant, Sandlin and Brian Coombs discussed taking Mark Coombs' money while he was lying asleep in the back seat of the automobile. After returning to Walker's home, Mark Coombs, the victim, went into a bedroom and went to sleep. The other three again discussed taking his money, and Brian Coombs twice attempted to remove his wallet, but he was unsuccessful.

Subsequently, Sandlin, Brian Coombs and the Defendant found a .45 caliber pistol underneath a mattress in one of the bedrooms, and Brian Coombs struck the victim in the head with it in an attempt to knock him unconscious. The three then found a .25 caliber pistol, and Brian Coombs attempted to persuade Sandlin and the Defendant to take the victim's money, but they both refused. Subsequently, Brian Coombs went into the bedroom, but he came out and stated that the victim had seen the gun and would, thus, have to be killed to avoid his reporting them to the police. Thereafter, Sandlin and the Defendant heard a shot, looked in the bedroom, and saw that Brian Coombs had shot Mark Coombs in the back of the head. A short time later, Brian Coombs shot the victim again.

After dividing the contents of the victim's wallet, the three decided to remove him from the house. Inasmuch as he was still alive, they located some wire with which to tie him, and the Defendant put the wire around the victim's neck and pulled on it. The three then removed the victim to the trunk of the Defendant's car and later dropped his body off a bridge.

The Defendant argues that the only conclusion possibly to be drawn from the evidence is that "Brian Coombs and only Brian Coombs robbed and killed Mark Coombs." We do not agree. An accomplice is criminally liable for the acts done by his confederates which were a probable and natural consequence of their common plan, and an accomplice need not act out each element of an offense, the acts of one accomplice being imputed to all. *Proctor v. State,* (1979) 272 Ind. 357, 397 N.E.2d 980, 983. The evidence discloses that the Defendant agreed to rob Mark Coombs and that even though Brian Coombs did the shooting, the Defendant attempted to strangle the victim and, while the victim still lived, helped to toss his body off a bridge. Further, the Defendant received a portion of the money taken from the victim's wallet. Such evidence is sufficient to sustain the verdict. *Harris v. State,* (1981) Ind., 425 N.E.2d 154, 156.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DEBRULER and PIVARNIK, JJ., concur.