**Gary W. LOWRANCE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 82A01–9005–CR–201.**

Court of Appeals of Indiana, First District.

Jan. 23, 1991.

Richard Kammen, Katharine Polito, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., David M. Sommers, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Gary W. Lowrance appeals his convictions after a jury trial of two counts of attempted murder, class A felonies, for which he received concurrent thirty (30) year sentences. Lowrance raises five issues, none of which constitutes reversible error.

## FACTS

The evidence most favorable to the verdict reveals that early in the morning of

August 5, 1989, Gary Lowrance was informed that his wife, Leslie Lowrance, was having an affair with his best friend, Steven Patterson. Patterson informed Gary that he and Leslie intended to take Gary's and Leslie's son to Kentucky where Patterson would raise him as his own son.

That night—after a day filled with chaotic events—all four of the above mentioned persons were present in Gary's apartment. Gary asked Leslie to come upstairs to kiss their son goodnight. As Leslie leaned over to kiss her son, Gary struck her, knocking her to the floor. Patterson heard the commotion and ran to Leslie's aid. Gary brandished a handgun. Patterson begged Gary not to shoot him. Gary stated "I'm going to kill you, you mother f___," and shot Patterson in the head numerous times. Gary then turned the gun on Leslie and shot her twice in the head. Gary ordered Leslie to sit still and watch Patterson bleed. Gary then proceeded to beat Leslie brutally about the jaw and face. When Gary's and Leslie's son began to cry, Gary explained they were playing a game and asked him if he would like to help.

Patterson almost died from his wounds. He suffered permanent brain damage and faces the prospect of an operation to remove a bullet lodged in his spine from which he may not survive. The two bullets fired into Leslie's head ricocheted off. One carried away hair and became imbedded in the wall. As a result of the beating, Leslie suffered loosened teeth, a cut lip, swollen jaw, a black eye, and a knot the size of a baseball on her face.

Additional facts are supplied as necessary.

## DECISION

### I.

*Whether the giving of preliminary instruction number 3 constituted fundamental error?*

At the beginning of trial, the trial judge read preliminary instruction number three to the jury as follows:

The fact that a charge has been filed, the defendant arrested and brought to trial, is not to be considered by you as any evidence of being an habitual offender.

Lowrance asserts the above instruction constitutes error because he had no prior criminal history whatsoever and there was no habitual offender issue involved in his case. He asserts that he was wrongly prejudiced by the instruction because the jury was left with the erroneous impression that he had a criminal record.

Lowrance admits that he failed to object to the above instruction. He argues that we must nevertheless reverse because the error is fundamental in nature.

■ Fundamental error has been described as a blatant error creating a substantial potential for harm. *Terry v. State* (1984), Ind., 465 N.E.2d 1085. Fundamental error has also been described as gross error which offends our concept of criminal justice and the denial of fundamental due process. *Reynolds v. State* (1984), Ind., 460 N.E.2d 506. The failure to object does not preclude review when such preclusion would deny the defendant "fundamental due process." *Johnson v. State* (1979), 271 Ind. 145, 390 N.E.2d 1005, *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312

■ Fundamental error doctrine cannot become a ruse to circumvent the necessity of timely objecting to alleged errors at trial. *Cox v. State* (1985), Ind., 475 N.E.2d 664. The mere fact that an alleged error implicates constitutional issues does not establish that fundamental error has occurred. *Wilson v. State* (1987), Ind., 514 N.E.2d 282.

In *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, our supreme court held the erroneous admission of evidence of the defendant's earlier rape conviction was harmless in his prosecution for rape. The *Stwalley* court held the error harmless because it did not appear that the jury's verdict was substantially swayed by the error. *Id.*

■ In the present case, preliminary instruction number three may have left the

jury with the false impression that Lowrance had some unspecified previous felony convictions. Considering the law of *Stwalley* and the evidence presented in the present case, we cannot find that the complained-of error created a substantial potential for harm. We do not find that the error was so blatant or gross as to constitute a denial of fundamental due process.

Lowrance has failed to preserve any error by making an objection to the instruction at trial. *Whittle v. State* (1989), Ind., 542 N.E.2d 981. Therefore, we find no error.

## II.

*Whether the trial court erred by permitting a psychiatrist to render his opinion that Lowrance was not insane as that term is defined by Indiana law?*

Lowrance raised the insanity defense. A court appointed psychiatrist testified as follows:

Basically what I am saying, according to the standards of insanity in the Indiana Law, I felt that [Lowrance] did not meet the criteria for insanity.

Lowrance contends the admission of the above testimony constitutes error because medical experts are not competent to render legal opinions. He asserts this testimony constitutes an usurpation of the jury's constitutional function.

This question is settled. Court appointed psychiatrists may properly testify that in their opinion a defendant was legally sane at the time of the commission of the crime. *Freed v. State* (1985), Ind., 480 N.E.2d 929. There is no prohibition preventing a court appointed psychiatrist from testifying on the ultimate question of legal sanity. *Lee v. State* (1979) 271 Ind. 307, 392 N.E.2d 470. Therefore, we find no error.

## III.

*Whether the trial court committed fundamental error in admitting Exhibit 26?*

During the defense's case-in-chief, Lowrance testified that he was honorably discharged from the Navy and testified about other details of his service. On cross-examination, the State introduced into evidence Lowrance's "Certificate of Release or Discharge From Active Duty." This document indicates that Lowrance was honorably discharged from the Navy. However, the box designated "Narrative Reason For Separation," contains the following:

Misconduct—Frequent Involvement of a Discreditable Nature with Civil or Military Authorities

Lowrance testified about the above information explaining that he had been reprimanded for being missing four or five times.

Lowrance did not raise an objection to the admission of the document in question at trial. Nevertheless, he argues that we must reverse his convictions because the document's introduction constitutes fundamental error.

Lowrance asserts that the document is confidential and protected under both the Constitution and the the Privacy Act. He argues the State's possession of this document and its subsequent admission at trial violated his rights of privacy and due process. Therefore, he argues, the trial court committed fundamental error in allowing it admitted.

We express no opinion regarding whether the State's possession of and introduction into evidence of Lowrance's discharge papers may have violated Lowrance's right to privacy or constituted a violation of federal law. Further, we express no opinion regarding whether a violation of the defendant's rights—such as that asserted in the present case—constitutes grounds for relief from a criminal conviction.

We do, however, conclude that the alleged error in the present case does not rise to fundamental error. We discussed fundamental error doctrine under Issue I above. We cannot imagine that the complained-of document in this case had a significant impact upon the jury's verdict.

This document does not suggest that Lowrance had a propensity for violence. It only states that he engaged in discreditable conduct during his service in the Navy. Lowrance explained at trial that the negative comments of the document related to his being missing four or five times.

Under these circumstances, we do not find that the admission of the document in question—whether erroneous or not—created a substantial potential for harm. We do not find that the admission of Lowrance's discharge papers from the Navy was so blatant or gross as to constitute a denial of fundamental due process in these criminal proceedings.

Lowrance has waived any error by failing to object to the admission of the document in question. *Bozeman v. State* (1988), Ind., 526 N.E.2d 1173. Therefore, we find no error.

## IV.

*Whether the trial court committed sentencing error by imposing concurrent presumptive sentences?*

As noted above, Lowrance was convicted of two counts of attempted murder, class A felonies. He was sentenced to concurrent thirty (30) year terms. Thirty years is the presumptive sentence for a class A felony. IND.CODE 35-50-2-4.

The trial court weighed the aggravating and mitigating circumstances, determined they balanced out, and imposed concurrent presumptive sentences. The trial court cited the following circumstances as aggravating: 1) premeditation, 2) that if Lowrance's aim had been better, two people would be dead, 3) to reduce the sentence would depreciate the seriousness of the offense, and 4) the assault was committed in the presence of the child. The trial court found the following mitigating circumstances: 1) this was Lowrance's first trouble with the law, and 2) the likelihood of re-occurrence is not likely.

Lowrance asserts no evidence exists to support a finding of premeditation. Also, he asserts the "bad aim" factor is not appropriately considered as aggravating because it constitutes the very crime for which he stands convicted. He asserts that—if these erroneously considered factors are removed from the trial court's weighing analysis—the mitigating circumstances would outweigh the aggravating ones and make him eligible for a ten year reduction in his sentences.

■ First of all, evidence exists to support the element of premeditation. Lowrance had hidden the gun's holster and an ammunition clip in his son's diaper bag. Earlier in the day of the crime, Lowrance told Patterson's mother that he had a gun but that he did not intend to use it on Patterson. Also, the manner in which Lowrance lured Leslie into the child's bedroom immediately before attacking her supports the finding of premeditation.

■ In reviewing a sentence, we will not adjust a sentence authorized by statute unless it is manifestly unreasonable in light of the offense and character of the offender. *Walker v. State* (1983), Ind.App., 454 N.E.2d 425. A sentence is not manifestly unreasonable if any reasonable person could find the sentence to be appropriate to the particular offense and offender. *Id.*

■ We routinely affirm consecutive increased sentences supported by only one valid aggravating factor. *Smith v. State* (1990), Ind.App., 549 N.E.2d 1101. The maximum sentence for the crime of attempted murder is fifty (50) years. I.C. 35-50-2-4. In the present case, the trial court was permitted under law to sentence Lowrance to consecutive fifty (50) year sentences totaling one-hundred (100) years. Because at least one valid aggravating circumstance cited by the trial court remains, we would have been required to affirm such a sentence. We believe it would be ironic for the law to mandate a different result in our review of a trial court's more merciful decision to impose concurrent presumptive sentences.

It is undisputed that the crimes in the present case were incredibly brutal. Without a doubt, we conclude that the trial court's imposition of concurrent presumptive sentences was not manifestly unrea-

sonable under the circumstances of this case. Therefore, we find no error.

## V.

*Whether the evidence was sufficient to support Lowrance's convictions?*

Lowrance attacks the sufficiency of the evidence. Specifically he argues the State failed to prove he entertained the requisite intent to kill his victims during the shootings.

In reviewing the sufficiency of the evidence, we consider the evidence most favorable to the verdict together with all reasonable inferences which may be drawn from that evidence and, if there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Fox v. State* (1979), 179 Ind. App. 267, 384 N.E.2d 1159. The reviewing court neither weighs the evidence nor judges the credibility of the witnesses. *Traxler v. State* (1989), Ind., 538 N.E.2d 268. Substantive evidence of probative value, such as is necessary to support a conviction, has qualities of directness and freedom from uncertainty. *Vuncannon v. State* (1970), 254 Ind. 206, 258 N.E.2d 639. The function of an appellate court in a criminal appeal is to determine whether or not evidence of guilt is substantial and of probative value, which requires more than a mere scintilla of evidence. *Id.* Evidence which only tends to support a conclusion of guilt is insufficient to sustain a conviction, as evidence must support the conclusion of guilt beyond a reasonable doubt. *Id.*

The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Meyers v. State* (1989), Ind., 547 N.E.2d 265, *cert. denied* —— U.S. ——, 110 S.Ct. 1954, 109 L.Ed.2d 316. The intent to commit murder may be inferred from the circumstances of the acts surrounding the incident. *Short v. State* (1989), Ind., 539 N.E.2d 939.

The evidence most favorable to the verdict indicates that Lowrance fired more than one bullet into the heads of each of his victims. We hold this constitutes suffi-

cient evidence to support his convictions for attempted murder. Therefore, we find no error.

Judgment affirmed.

RATLIFF, C.J., and STATON, J., concur.