S.M., Natural Mother, In the Matter of Termination of the Parent–Child Relationship S.M., A.M., K.M., and C.M., Children, Appellant–Respondent,

v.

**ELKHART COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee–Petitioner.**

No. 20A03–9805–JV–235.

Court of Appeals of Indiana.

March 8, 1999.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, Indiana, Attorney for Appellant.

Michael J. Grattan III, Elkhart, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

S.M. (Mother) appeals the termination of her parental rights in her four children. She presents two issues:

I. Whether the trial court erred by allowing the State to recall her to testify on the second day of the termination hearing; and

II. Whether the trial court erred by excluding her from the courtroom during her children's testimony.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In January of 1995, Mother came home intoxicated and began hitting her two older children, ages seven and nine. Mother's sister, who had been babysitting for the children, reported the abuse to the police and alleged that the children had endured similar traumas many times. The Elkhart County Office of Family and Children (the State) removed Mother's four children from her home and placed them with their maternal grandmother (the children had not lived with their respective biological fathers for at least a year). In May of 1995, the children were adjudicated to be Children in Need of Services (CHINS) due to Mother's physical abuse of her two older children and her neglect of the younger two.

The children continued living with their grandmother after the CHINS adjudication. This heightened the already intense animosity between Mother and the grandmother. Mother's supervised visits with the children became difficult. Eventually, the court withdrew her visitation privilege and issued a no-contact order.

The court also ordered Mother to participate in an alcohol treatment program. Mother attended at least three different programs but failed to complete any of them to the satisfaction of the program sponsors. In March of 1996, the court held Mother in contempt of court for failing to stay in the alcohol treatment programs and ordered her to spend ten days in jail. Three months later, the court ordered Mother to attend a second contempt hearing concerning the alcohol treatment requirement. Mother came to the hearing intoxicated. The court again held her in contempt and ordered jail time. After her release from jail, Mother continued drinking sporadically through at least July of 1997.

The State filed a petition to terminate parental rights in May of 1996. After several delays and continuances, the court scheduled the termination hearing for December of 1997. Three months prior to the scheduled hearing, the State filed a motion to allow the two older children to testify outside Mother's presence. The motion was supported by a psychiatrist's affidavit, which stated that testifying in the courtroom in Mother's presence would create a substantial likelihood of emotional or mental harm to the children. The court granted the motion over Mother's opposition.

At the termination hearing, the State first presented evidence to terminate the parental rights of the children's respective fathers, either voluntarily or by default. The State

then presented evidence against Mother. During the presentation of evidence, the State called Mother as an adverse witness. After counsel for both sides had completed their questioning of Mother, the State called other witnesses, including the two children. During the children's testimony, the court required Mother to leave the courtroom.

After the children testified, the trial court continued the hearing until the following month. In the weeks between the hearing dates, Mother submitted several recently completed documents to the family casework-er. Included among the documents was a form on which Mother had stated that she had no history of alcohol abuse. When the hearing resumed, the State recalled Mother to elicit testimony about her statement on that document. Mother's counsel objected to having Mother recalled; the trial court over-ruled the objection.

At the close of the evidence, the trial court took the matter under advisement. A few weeks later, the court granted the termi-nation petition. Mother now appeals.

## DISCUSSION AND DECISION

### I. Trial Court's Decision to Allow State to Recall Witness

■ Mother maintains that the trial court erred when it allowed the State to recall her for testimony about the document. She con-tends that the error prejudiced her because the trial judge based one of its findings of fact on the testimony, i.e., the court found that she had lied on the document concerning her history of alcohol abuse. She further contends that the error prejudiced her be-cause she had no opportunity to present re-sponsive evidence.

The State contends that Mother had a sufficient opportunity to respond to the evi-dence. In addition, the State maintains that the decision to allow the recall was within the trial court's discretion.

■ The State is correct. A trial judge has discretion to determine whether a party may recall a witness. Ind. Evidence Rule 611(a)(1); *May v. State*, 263 Ind. 690, 693, 338 N.E.2d 258, 260 (1975). This court will not disrupt the trial judge's ruling so long as Mother had the opportunity to present con-tradictory evidence. *See Jones v. State*, 600 N.E.2d 544, 547 (Ind.1992) (decision to allow new evidence during redirect examination is within trial court's discretion); *Shepherd v. State*, 690 N.E.2d 318, 325 (Ind.Ct.App.1997) *trans. denied*. Here, the evidence presented during the recall was a form that Mother had completed and had sent to the family case-worker; Mother could not have been sur-prised by its contents. *Record* at 370–71, 375. Given Mother's acknowledgment that she purposefully misrepresented her alcohol abuse on the form, there was very little responsive evidence available to her. Moth-er's counsel had the opportunity to elicit Mother's explanation upon cross-examina-tion, during which Mother testified that she was not abusing alcohol at the time she filled out the form. *Record* at 379. The cross-examination was an adequate opportunity to present responsive evidence.

■ Moreover, the document was mere-ly additional evidence of several problems that rendered Mother unable to provide a stable home for her children. Even if it had been error to admit the document and to make the related fact finding, the trial judge would have had sufficient evidence to termi-nate Mother's parental rights. When a trial judge makes an erroneous fact finding that is superfluous to the judgment, the error does not warrant reversal. *See Williams v. Rogi-er*, 611 N.E.2d 189, 196 (Ind.Ct.App.1993), *trans. denied; In re A.C.B.*, 598 N.E.2d 570, 573–74 (Ind.Ct.App.1992) (trial court's erro-neous finding of fact did not require reversal of termination).

### II. Exclusion of Mother from Courtroom

Mother raises two challenges to the trial court's decision to exclude her from the courtroom during the children's testimony. First, Mother contends that the psychiatrist's affidavit which supported the State's motion was inadmissible and insufficient. Second, Mother contends that the termination statute authorizes only two methods for presenting children's testimony outside their parents' presence: closed-circuit television testimony

or videotaped testimony. IC 31–35–5–2, –3. According to Mother, the trial court violated her due process rights by failing to adhere to the statutory procedures concerning children's testimony.

In response, the State maintains that the psychiatrist's affidavit was admissible and was sufficient to support the trial court's ruling. The State also maintains that Mother waived any challenge to her exclusion from the courtroom by failing to object at the time the children testified.

■ We need not consider whether the affidavit was admissible or was sufficient, because, as explained below, we conclude that the trial court erred by excluding Mother from the courtroom. We hold, however, that Mother waived the trial court's error by failing to present a timely objection.

As the State points out, Mother's counsel did not object when the trial court stated that Mother would be excluded from the courtroom while the children testified. The State also points out that a litigant must object to an evidentiary ruling in order to preserve the ruling for appeal. *See In Re D.G.*, 702 N.E.2d 777, 779 n. 2 (Ind.Ct.App. 1998).[1] Here, Mother's counsel did not object to having Mother excluded from the courtroom. Rather, when the State called the children as witnesses, there was a discussion among counsel and the judge concerning the method of presenting the children's testimony outside Mother's presence. Mother's counsel suggested that the court engage in an informal discussion with the children.

*Record* at 343. The judge indicated that the children's testimony should be part of the evidentiary proceedings. *Record* at 344. The judge then asked the guardian ad litem whether the children could tolerate testifying in the courtroom; the guardian responded that the children were prepared to so testify. The State then suggested that Mother go into the hallway outside the courtroom while the children were testifying. The trial court accepted the suggestion, and Mother's counsel made no objection. The lack of objection constituted a waiver of any error arising from Mother's exclusion from the courtroom.[2]

There is, however, an exception to the waiver requirement: if the ruling at issue was fundamental error, this court must reverse the trial court regardless of the lack of objection. We must thus determine whether the exclusion of Mother from the courtroom was error, and if so, whether the error was fundamental.[3]

To determine whether Mother's exclusion was error, we look first to IC 31–35–5–1—7, which controls children's out-of-court testimony in termination actions. The statute assumes that the parent will be present in the courtroom and authorizes only two methods for presenting children's testimony outside the courtroom: closed circuit television or videotape. IC 31–35–5–2, –3.

The tenets underlying the statute received extensive attention from the courts for several years after its 1987 enactment.[4] State

1. Though not technically an evidentiary ruling, the trial court's decision to exclude Mother from the courtroom is akin to such a ruling. As such, an objection was required to preserve the ruling for appeal.

2. Counsel's original opposition to the State's motion, recorded at the hearing on the motion, did not preserve the objection for appeal. *See Poulton v. State*, 666 N.E.2d 390, 393 (Ind.1996); *Clausen v. State*, 622 N.E.2d 925, 927–28 (Ind. 1993); *Sturma v. State*, 683 N.E.2d 606, 611–12 (Ind.Ct.App.1997).

3. Our courts have applied the fundamental error doctrine in termination cases. *See, e.g., In re D.G.*, 702 N.E.2d 777, 779 n. 2 (Ind.Ct.App.1998) (evidentiary ruling not fundamental error); *In re L.B.*, 616 N.E.2d 406, 407 (Ind.Ct.App.1993) (fundamental error where state failed to prove

element of termination) *trans. denied,*; *In re D.T.*, 547 N.E.2d 278, 281 (Ind.Ct.App.1989) *trans. denied* (counsel's assistance not ineffective, not fundamental error). Similarly, the courts have applied the fundamental error doctrine in other civil cases. *See, e.g., In re Commitment of Gerke*, 696 N.E.2d 416, 421 (Ind.Ct.App.1998) (applying fundamental error doctrine in commitment case); *Manns v. Skolnik*, 666 N.E.2d 1236, 1240 (Ind.Ct.App.1996)(applying fundamental error doctrine in securities violation case) *trans. denied.*

4. The original statute, codified as IC 31–6–16–1, applied to Child In Need of Services actions; the legislature amended that statute in 1990 to make it applicable to termination actions. In 1997, the legislature revised and recodified the statute. The statute applicable to termination actions is now codified as IC 31–35–5–1—7.

courts as well as the United States Supreme Court considered whether the use of similar procedures in criminal cases violated state or federal constitutional confrontation rights. *See e.g. Coy v. Iowa* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *Brady v. State*, 575 N.E.2d 981 (Ind.1991) (child testimony statute applicable in criminal case held violative of Indiana confrontation clause). The attention resulted in a revision of the Indiana statute controlling child testimony in criminal cases.[5] During the same time period, our legislature amended the statute at issue here several times. *See* P.L. 1–1997 § 18 (revised and recodified original statute); P.L. 142–1994 § 5 (revised original statute); P.L. 4–1993, § 321(revised original statute); P.L. 37–1990, § 18 (revised original statute). Each time, the legislature retained the two permissible procedures for presenting children's testimony outside the courtroom. Further, the legislature retained the original requirement that the parties be able to hear and observe the child's testimony. *See* IC 31–35–5–6, previously codified as IC 31–6–16–6. The retention of these procedures and requirements during the years of extensive legislative and judicial attention toward similar statutes indicates that the statutory methods are the exclusive means for presenting children's testimony outside their parents' presence in a termination hearing. At the very least, the statute requires that the trial court employ a procedure that allows the parent to hear and observe the child's testimony. Here, Mother could neither see nor hear the children during their testimony. Accordingly, the trial court's decision to exclude Mother from the courtroom was error.

◼◼◼◼ Having determined that the trial court erred, we must now decide whether the error was fundamental. The fundamental error doctrine applies to egregious trial errors. In order for this court to overturn a trial court ruling based on fundamental er-

ror, the error must have been "a clearly blatant violation of basic and elementary principles, *and* the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *Reynolds v. State*, 460 N.E.2d 506, 508 (Ind.1984) (emphasis added).

Here, the harm from the error was not substantial enough to rise to the level of fundamental error. Although the children's testimony was undoubtedly persuasive for the trial court, the testimony was reflective of other evidence the trial court received. The children testified that Mother was often intoxicated, that she was physically abusive toward them, and that they were afraid of her. *Record* at 345–58. Evidence from other witnesses addressed these matters in greater detail. *Record* at 395, 407, 413–14, 422, 701, 756–57, 805, 814–15. Given that the children's testimony reiterated other evidence presented to the trial court, the harm arising from the procedural error in presenting their testimony was not substantial enough to be deemed fundamental error. As such, Mother waived the error by failing to object at trial.

Affirmed.

FRIEDLANDER, J., and MATTINGLY, J., concur.

◼◼◼◼

---

5. The original criminal statute allowed closed-circuit or videotaped testimony such that the defendant could observe and hear the child without the child observing or hearing the defendant. In response to our Supreme Court's decision in *Brady*, 575 N.E.2d 981, the legislature revised that statute to require that the defendant and the child be able to observe and hear each other during the testimony. IC 35–37–4–8(g)(7). In-

terestingly, the legislature did not amend the parallel statute applicable in CHINS proceedings, IC 31–34–14–1, or the statute at issue here. The CHINS and termination statutes still permit closed-circuit or videotaped testimony during which the child can neither observe nor hear the parent-respondent. Those statutes do, however, require that the parent be able to see and observe the child.