853 N.E.2d 1037 (2006)
In the Matter of the Involuntary Termination of the Parent-Child Relationship of E.E., D.E. and E.E., Minor Children, and their Father, Eric Secrest.
Eric Secrest, Appellant-Respondent,
v.
Marion County Office of Family and Children, Appellee-Petitioner, and
Child Advocates, Inc., Appellee-Guardian Ad Litem.
No. 49A02-0602-JV-146.
Court of Appeals of Indiana.
September 15, 2006.
*1039 Ann M. Sutton, Marion County Public Defender, Victoria L. Bailey, Gilroy, Kammen & Hill, Indianapolis, IN, Attorneys for Appellant.
Theodore H. Randall, Jr., MCDCS Legal Division, Indianapolis, IN, Attorney for Appellee.

OPINION
VAIDIK, Judge.

Case Summary
Eric Secrest appeals the involuntary termination of his parental rights to E.E., D.E., and Er.E. Although the Department of Child Services' notice to Secrest was ambiguous as to the date and time of the final termination hearing, Secrest did not object to the form of the notice and thus has waived the issue. Waiver notwithstanding, the error is not fundamental. In addition, because Secrest failed to complete the court-ordered services, was represented by counsel at the final hearing, and does not have a constitutional right to be present at the final hearing, the trial court did not violate his procedural due process rights by denying his attorney's motion to continue the hearing and by conducting the hearing in Secrest's absence. We therefore affirm the trial court.

Facts and Procedural History
On May 25, 2004, the Marion County Office of Family and Children, which is now called the Marion County Office of Indiana Department of Child Services ("MCDCS"), filed a petition alleging that E.E. (born July 11, 2000), D.E. (born May 17, 2002), and Er.E. (born May 18, 2004) were children in need of services ("CHINS"). Specifically, the petition alleged that "one or more of the children have been born with fetal alcohol syndrome or any amount, including a trace amount, of a controlled substance or a legend drug in the child's body" and that the children's mother, Tracey Evans, "uses illicit substances while the children are in her care and custody. Ms. Evans tested positive for marijuana at the birth of [Er.E.]. [Er.E.] tested positive for cocaine and marijuana at birth. This is the second child of Ms. Evans[] who has tested positive for illicit substances at birth[.]" Ex. p. 11. As to the alleged father Secrest, the petition averred that he "has not successfully demonstrated to the [MCDCS] the ability or willingness to appropriately parent the children. Mr. Secrest has not established paternity over any of the children at this time." Id.
Secrest admitted to the allegations in the CHINS petition at a hearing on June 29, 2004, and the court adjudged the children to be CHINS and placed them in foster care. The permanency plan was reunification with the parents. A disposition hearing was held on July 2, 2004, and the trial court entered a Participation Decree that required, among other things, Secrest to participate in home-based counseling, undergo a parenting assessment, *1040 take parenting classes, undergo drug and alcohol assessment and random drug testing, participate in supervised visits with the children, and establish paternity. The MCDCS then made the appropriate service referrals.
On January 11, 2005, the MCDCS filed a Petition for Involuntary Termination of the Parent-Child Relationship between Secrest and E.E., D.E., and Er.E. The trial court held an initial hearing on the petition on January 13, at which time the trial court appointed attorney Steve McNutt to represent Secrest. Secrest appeared at a continuation of the initial hearing on March 4, 2005, and he entered a denial to the allegations in the termination petition. A pre-trial hearing was held on April 14, 2005, at which Secrest failed to appear, and another pre-trial hearing was set for May 31, 2005.
Secrest appeared at the May 31 pre-trial hearing, at which time the fact-finding hearing was set for August 23, 2005. The MCDCS sought a continuance of this hearing due to a scheduling conflict, and the trial court rescheduled the fact-finding hearing for September 2, 2005. However, this hearing was continued to September 19, 2005, because the parties were not notified of the September 2 hearing. At the September 19 hearing, the trial court ordered Secrest to establish paternity, ordered that new service referrals be made, and set the matter for a final pre-trial hearing on November 7, 2005.
At the November 7 pre-trial hearing, the trial court set the final termination hearing for "1/20/06, 2nd choice, 1/2 day and 3/8/06 at 1 p.m., 1st choice, 1/2 day in Ct. 10." Appellant's App. p. 6 (capitalization omitted); see also id. at 47. Secrest failed to appear at the pre-trial hearing, though his attorney McNutt did appear. See id. at 47. The very next day, the MCDCS sent the following letter to Secrest's last known address:
This letter is notice of the involuntary termination of parental rights trial set for January 20, 2006 as a second choice and March 8, 2006 as a first choice in the Marion County Superior Court, Juvenile Division, Courtroom 10. The Juvenile Court is located at 2451 North Keystone Avenue, Indianapolis, Indiana, 46218.
Should you fail to be present at this time and date, it is possible that a default judgment will be entered against you. This would mean that your parental rights with the minor child[ren] will be terminated. This also will mean that you would not be entitled to court-ordered visitation or child support for this child[ren].
Your attorney is Steve McNutt, Esq. His telephone number is (317)257-5391, and his address is 3545 Washington Blvd., Indianapolis, Indiana, 46205. All questions about this Court matter should be referred to him.
Ex. p. 4. This letter was also sent to McNutt.
The termination hearing was held on January 20, andagainSecrest failed to appear. McNutt, Secrest's attorney, moved for a continuance, which the trial court denied.[1] After the State presented its case, McNutt advised the trial court, "On behalf of the father since he is not present, Your Honor, I have no evidence to present on his behalf." Tr. p. 43-44. Thereafter, the trial court issued an Order *1041 Terminating Parental Rights. In regards to Secrest's failure to appear at the termination hearing, the trial court made the following initial observations in its order:
Accepted into evidence and marked as petitioner's Exhibits One and Two were copies of notice letters of today's trial date stating the possible consequences for failure to be present sent to the last known of address for each Respondent. This Court determined that adequate notice was given by petitioner to alleged father Eric Secrest and mother Tracey Evans to proceed with today's trial.
Appellant's Br. p. 12-13 (Order Terminating Parental Rights). The trial court then made several findings regarding Secrest. Specifically, the trial court found that: (1) Secrest tested positive for illegal drugs at his Parenting Assessment; (2) he did not follow up with recommended drug treatment classes and random screens to address his illegal drug use despite re-referrals; (3) after submission of the written service referral report, he failed to submit himself for drug treatment classes or random urine screens; (4) he was not reunited with E.E., D.E., and Er.E. during the pendency of the CHINS matter; (5) he did not make a home-based service referral; and (6) he did not complete court-ordered services for the possible reunification with the children. As such, the trial court concluded:
3. There is a reasonable probability that the conditions which resulted in the children's removal, namely, the use of illegal drugs by either parent will not be remedied. . . . Secrest has not provided documentation that he does not continue to use illegal drugs.
4. There is a reasonable probability that the continuation of the parent-child relationship with these parents and their respective children poses a threat to the children's well-being; namely, use of illegal drugs by either parent inherently presents safety concerns for the children's welfare.
5. Termination of the parent-child relationship between these children named in the above-caption, and each Respondent Evans and Respondent Secrest is in the best interest of each child respectively.
Id. at 16. The trial court therefore terminated the parent-child relationship between Secrest and E.E., D.E., and Er.E.[2] Secrest now appeals.

Discussion and Decision
Secrest raises two issues on appeal. First, he contends that the MCDCS's notice advising him of the date of the fact-finding hearing was ambiguous and thus defective under the statute. Second, he contends that the trial court violated his procedural due process rights when it denied his attorney's motion for a continuance during the final termination hearing and proceeded in his absence. We address each issue in turn.

I. Notice
First, Secrest contends that the MCDCS's notice advising him of the date of the fact-finding hearing was ambiguous and thus defective under the statute. Indiana Code § 31-35-2-6.5, which lays out the notice requirements in a termination proceeding, provides:
(a) This section applies to hearings under this chapter relating to a child in need of services.

*1042 (b) At least ten (10) days before a hearing on a petition or motion under this chapter:
(1) the person or entity who filed the petition to terminate the parent-child relationship under section 4 of this chapter; or
(2) the person or entity who filed a motion to dismiss the petition to terminate the parent-child relationship under section 4.5(d) of this chapter;
shall send notice of the review to the persons listed in subsections (c) and (d).
(c) Except as provided in subsection (h), the following persons shall receive notice of a hearing on a petition or motion filed under this chapter:
(1) The child's parent, guardian, or custodian.
* * * * *
"Compliance with the statutory procedure of the juvenile code is mandatory to effect a termination of parental rights[.]" In re T.W., 831 N.E.2d 1242, 1246 (Ind.Ct.App. 2005). However, statutory notice is a procedural precedent that must be performed prior to commencing an action, but it is not an element of the plaintiff's claim. Id. Failure to comply with a statutory notice is a defense that must be asserted. Id. Once placed in issue, the plaintiff bears the burden of proving compliance with the statute. Id.
Here, the MCDCS sent Secrest a letter that said, "This letter is notice of the involuntary termination of parental rights trial set for January 20, 2006 as a second choice and March 8, 2006 as a first choice in the Marion County Superior Court, Juvenile Division, Courtroom 10." Ex. p. 4 (emphasis added). Secrest admits that he received notice from the MCDCS at least ten days before the fact-finding hearing, as required by statute. Nevertheless, he argues that "the information contained within that letter was fatally ambiguous and thus failed to provide him with the actual and fair notice to which he was entitled." Appellant's Br. p. 6. Secrest explains:
Taking the letter on its face, the Hearing Notice informed Secrest that the first choice of date for the hearing was March 8, 2006 while the second choice of date for the hearing was January 20, 2006. Put another way, the March 8 date was to be the trial court's first (or primary or preferred) date on which to hold the hearing with the January 20 date to be the court's second (or back-up or fall-back) date.
Appellant's Br. p. 7. Secrest highlights the fact that he did not understand the terminology "first choice" and "second choice."
We agree with Secrest that the MCDCS's notice is ambiguous. That is, the notice advised Secrest of two dates, "January 20, 2006 as a second choice and March 8, 2006 as a first choice." Ex. p. 4. Although the dates are connected by an "and," which arguably means that Secrest must appear at both dates, the notice later references "this time and date," a clear reference to a single date, not multiple dates. Id. In addition, the terminology "first choice" and "second choice" is not readily understood by lay people, who are the ones receiving these notices from the Department of Child Services. Indiana Code § 31-35-2-6.5 requires that Secrest be sent notice reasonably intended to notify him of the date and time of the hearing at which his parental rights may be terminated. The notice here does not reasonably notify Secrest of either. As such, we discourage the Department of Child Services from using this type of notice in the future.
Although we find the notice to be ambiguous, as even Secrest concedes, he *1043 did not object to the form of the notice. In fact, the notice provided McNutt's name, address, and phone number and informed Secrest that if he had any questions, he should contact McNutt. Apparently, Secrest did not do even this. Therefore, Secrest has waived this issue. Despite waiver, Secrest argues that the fundamental error doctrine applies. The fundamental error doctrine applies to egregious trial errors. S.M. v. Elkhart County Office of Family & Children, 706 N.E.2d 596, 600 (Ind.Ct.App.1999). In order for this court to reverse based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively. See id. Given that the MCDCS's notice provided two dates, one of which the hearing was held on, and told Secrest to contact McNutt if he had any questions, Secrest has failed to prove that the ambiguous notice amounted to fundamental error. We therefore affirm the trial court on this issue.

II. Continuance
Next, Secrest contends that the trial court violated his procedural due process rights when it denied his attorney's motion for a continuance during the final termination hearing and proceeded in his absence. The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. In re C.C., 788 N.E.2d 847, 852 (Ind.Ct. App.2003), trans. denied. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. Id. The nature of the process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. Id. This court must first identify the precise nature of the private interest threatened by the State before we can properly evaluate the adequacy of the State's process. Id.
In this case, both the private interests and the countervailing governmental interests that are affected by the proceeding are substantial. In particular, the action concerns a parent's interest in the care, custody, and control of his child, which has been recognized as one of the most valued relationships in our culture. Id. Moreover, it is well settled that the right to raise one's child is an essential, basic right that is more precious than property rights. Id. As such, a parent's interest in the accuracy and justice of the decision is commanding. Id. On the other hand, the State's parens patriae interest in protecting the welfare of a child is also significant. Id. Delays in the adjudication of a case impose significant costs upon the functions of government as well as an intangible cost to the life of the children involved. Id. Here, before the final termination hearing was held on January 20, 2006, Secrest failed to appear on at least two different occasions. During this same time period, Secrest did not complete the court-ordered services. While continuances may be necessary to ensure the protection of a parent's due process rights, courts must also be cognizant of the strain these delays place upon children. See id. at 853.
When balancing the competing interests of a parent and the State, we must also consider the risk of error created by the challenged procedure. See id. In this case, Secrest claims that the risk of *1044 error is great "given the way [the MCDCS] had decided to present its case. Caseworker Wilson testified that she was not able to determine if Secrest's drug use had been alleviated. . . . Even though [the MCDCS] bore the burden to show that Secrest had not stopped using drugs, the issue was reframed and the burden shifted to Secrest to produce evidencewhich he could not do in his absence." Appellant's Br. p. 9-10. However, we find that Secrest's rights were not significantly compromised. In particular, caseworker Wilson testified that she was not able to determine whether Secrest had stopped using drugs because he failed to complete drug treatment as ordered by the court, not because he did not show up at the final termination hearing. In addition, Secrest was represented by attorney McNutt throughout the entire proceedings, even when he failed to appear on the final date. During the final termination hearing, McNutt was able to cross-examine, and did in fact cross-examine, the State's witnesses. Finally, we observe that Secrest does not have a constitutional right to be present at a termination hearing. See C.C., 788 N.E.2d at 853. Given that Secrest's attorney continued to represent him and cross-examine witnesses in Secrest's absence, that Secrest did not complete the court-ordered services, which made it impossible for caseworker Wilson to tell if Secrest had stopped using drugs, and that Secrest does not have a constitutional right to be present at the hearing, we conclude that the risk of error caused by the trial court's denial of the continuance was minimal.
After balancing the substantial interest of Secrest with that of the State and in light of the minimal risk of error created by the challenged procedure, we conclude that the trial court's denial of Secrest's attorney's request for a continuance and its decision to proceed in Secrest's absence did not deny Secrest due process of law.
Affirmed.
BAKER, J., and CRONE, J., concur.
NOTES
[1] Specifically, attorney McNutt told the trial court, "On behalf of the father, Eric Secrest, Your Honor, I'd request a continuance of the hearing. He's not here. I don't know why he's not here. Without him here, my ability to protect his interests is severely curtailed." Tr. p. 4.
[2] The trial court also terminated Evans' parental rights to the children; however, this appeal does not involve her.