## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/06/2017, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of T.L. & C.S. (Children) and M.L. (Mother);

M.L. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

September 6, 2017

Court of Appeals Case No. 12A04-1703-JT-496

Appeal from the Clinton Circuit Court

The Honorable Bradley K. Mohler, Judge

Trial Court Cause No.
12C01-1608-JT-242
12C01-1608-JT-243

**May, Judge.**

[1] M.L. ("Mother") appeals the denial of her Motion for Relief from Judgment under Indiana Trial Rule 60(B). We affirm.

# Facts and Procedural History

[2] Mother[1] had two children, T.L., born August 15, 2011, and C.S., born February 7, 2014 (collectively, "Children"). On June 4, 2015, the Department of Child Services ("DCS") removed Children from Mother's care "due to Mother's drug usage and instability in housing." (App. Vol. II at 9.) Each child was adjudicated a Child in Need of Services ("CHINS") on July 10, 2015.

[3] On August 23, 2016, DCS filed a petition to involuntarily terminate Mother's parental rights to Children. The trial court held a hearing on November 7, 2016, and Mother appeared at the hearing with counsel. At that hearing, she filed a form voluntarily relinquishing her parental rights to Children. Mother also participated in dialogue with the trial court regarding her decision to do so.

[4] On November 30, 2016, Mother filed, *pro se*, a "Motion to Appeal," (*id.* at 23), stating she wished to "appeal these 2 decisions in cases. I was under the influence of controlled substances and wasn't understanding what I was doing and the outcome." (*Id.*) (errors in original). The trial court subsequently

---

[1] T.L. and C.S. have different fathers. Their respective fathers voluntarily relinquished their parental rights and do not participate in this appeal.

considered Mother's request a motion for relief from judgment under Indiana Trial Rule 60(B) and held a hearing on the matter on February 7, 2017. On February 10, 2017, the trial court denied Mother's motion.

# Discussion and Decision

Mother argues the trial court abused its discretion when it denied her motion for relief from judgment under Indiana Trial Rule 60(B) because the underlying termination orders were void due to lack of proper advisement of Mother's rights by the court. As an initial matter, we note, and both parties acknowledge, Mother did not present this argument before the trial court,[2] and therefore it is waived. *See Hite v. Vanderburgh Cty. Office of Family & Children,* 845 N.E.2d 175, 180 (Ind. Ct. App. 2006) (failure to present an issue before the trial court waives the issue for appellate consideration).

To avoid waiver, Mother argues the trial court committed fundamental error because it did not properly advise Mother of her rights before she voluntarily relinquished her parental rights to Children.

> The fundamental error doctrine applies to egregious trial errors. In order for this court to overturn a trial court ruling based on fundamental error, the error must have been 'a clearly blatant violation of basic and elementary principles, and the harm or

---

[2] In her post-judgment motion, Mother asserted her consent to the termination of her parental rights was invalid because she was under the influence of controlled substances when she consented at the hearing. Mother has not raised that argument on appeal.

potential for harm therefrom must be substantial and appear clearly and prospectively.'

*S.M. v. Elkhart Cty. Office of Family & Children*, 706 N.E.2d 596, 600 (Ind. Ct. App. 1999) (quoting *Reynolds v. State*, 460 N.E.2d 506, 508 (Ind. 1984)). Specifically, Mother argues she "was not advised, either in writing or verbally by the court, that her consent could not be based on a promise regarding having contact with her children after her rights were voluntarily terminated." (Br. of Appellant at 14.)

Under Indiana Code section 31-35-1-12, the trial court must advise a parent who consents to the voluntary termination of their parental rights that:

> (1) their consent is permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless the parent is incompetent;
>
> (2) when the court terminates the parent-child relationship:
>
>> (A) all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, parenting time, or support pertaining to the relationship, are permanently terminated; and
>>
>> (B) their consent to the child's adoption is not required;
>
> (3) the parents have a right to the:
>
>> (A) care;

(B) custody; and

(C) control;

of their child as long as the parents fulfill their parental obligations;

(4) the parents have a right to a judicial determination of any alleged failure to fulfill their parental obligations in a proceeding to adjudicate their child a delinquent child or a child in need of services;

(5) the parents have a right to assistance in fulfilling their parental obligations after a court has determined that the parents are not doing so;

(6) proceedings to terminate the parent-child relationship against the will of the parents can be initiated only after:

(A) the child has been adjudicated a delinquent child or a child in need of services and removed from their custody following the adjudication; or

(B) a parent has been convicted and imprisoned for an offense listed in IC 31-35-3-4 (or has been convicted and imprisoned for an offense listed in IC 31-6-5-4.2(a) before its repeal), the child has been removed from the custody of the parents under a dispositional decree, and the child has been removed from the custody of the parents for six (6) months under a court order;

(7) the parents are entitled to representation by counsel, provided by the state if necessary, throughout any proceedings to terminate the parent-child relationship against the will of the parents;

(8) the parents will receive notice of the hearing, unless notice is waived under section 5(b) of this chapter, at which the court will decide if their consent was voluntary, and the parents may appear at the hearing and allege that the consent was not voluntary; and

(9) the parents' consent cannot be based upon a promise regarding the child's adoption or contact of any type with the child after the parents voluntarily relinquish their parental rights of the child after entry of an order under this chapter terminating the parent-child relationship.

[8] Before the hearing regarding Mother's consent to voluntary termination of her parental rights, Mother received, reviewed, and signed a document titled "Voluntary Relinquishment of Parental Rights," (App. Vol. II at 13), which included the terms: "That when the court terminates the parent-child relationship, all rights powers, privileges, immunities duties, and obligations (including any rights to custody, control, visitation, or support) pertaining to that relationship are permanently terminated and my consent to the child's adoption is not required." (*Id.*)

[9] At the beginning of hearing regarding Mother's consent to voluntary termination of her parental rights, the trial court stated:

[Court]: I do wanna [sic] advise you of your rights and the contents of the documents. The documents indicate that uh, you understand that any consent uh, that you would be giving would be permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless you were found to be incompetent or unless the Court finds other reason to set it aside. When the court terminates a parent/child relationship all rights,

power, privileges, immunities, duties, and obligations pertaining to that relationship are permanently terminated and then a consent to any future adoption would not be required. As a parent you do have the right to the care, custody, and control of your child as long as you fulfill your parental obligations. You have a right to have a judicial determination of any alleged failure to fulfill your parental obligations in a proceeding, uh, what's [sic] called a child in need of services. [sic] And that would be the prior case that we've been going through. As a parent you have a right to assistance in fulfilling your parental obligations after a Court has determined that you're not doing so. That would be any of the services or programs that were offered, uh, as part of the CHINS case. Proceedings to terminate a parent/child relationship against your will could only be initiated after the child has been adjudicated a child in need of services and then removed from your custody following that adjudication. Uh, and it has to be a -- a child has been removed for a period of least six months under court order. You're additionally entitled to representation by an attorney. We have provided counsel for you both through the CHINS case and this termination case. Uh, additionally uh, you'd be waiving notice of any future hearings in this case and/or any notice of the adoption uh, of the children. Uh, [Mother] those are the terms that are outlined in the uh, document. Do you understand those terms?

[Mother]: Yes.

(Tr. at 4-6.) The trial court repeated these stipulations throughout the hearing and Mother indicated she understood them each time. During Mother's testimony, the trial court asked, "[H]as anyone promised you anything, threatened you in any way or forced you into signing the document or making this decision?" (*Id*. at 10.) Mother answered, "No." (*Id*.)

[10] Mother has not argued on appeal she was promised contact with Children after her voluntary relinquishment of her parental rights, instead she focuses on the fact the trial court did not use the exact language of Indiana Code section 31-35-1-12(9) to ensure she understood her rights and waiver thereof prior to relinquishing her parental rights to Children. The trial court advised Mother multiple times of the rights she relinquished when she voluntarily terminated her rights to Children. She was advised multiple times she would no longer be permitted to have contact with Children and her consent would not be required for any subsequent adoption. She denied being promised "anything," (*id.* at 10), in exchange for voluntarily relinquishing her parental rights.

[11] Therefore, we conclude the advisements as a whole were sufficient and Mother has not demonstrated fundamental error. *See Matter of Snyder*, 418 N.E.2d 1171, 1180 (Ind. Ct. App. 1981) ("A parent who executes a voluntary relinquishment of parental rights is bound by the consequences of such action, unless the relinquishment was procured by fraud, undue influence, duress, or other consent-vitiating factors."). Accordingly, the trial court did not abuse its discretion by denying Mother's motion for relief from judgment.

# Conclusion

[12] The trial court's advisement of Mother's rights and waivers thereof was sufficient under Indiana Code section 31-35-1-12, and thus, she has not demonstrated fundamental error that could justify relief from judgment. We affirm.

Affirmed.

Barnes, J., and Bradford, J., concur.