# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 11 2019, 10:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca Eimerman
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of A.J., D.J., and C.J. (Minor Children) and | February 11, 2019 |
| | Court of Appeals Case No. 18A-JT-1815 |
| F.J. (Father), | Appeal from the Hamilton Circuit Court |
| *Appellant-Respondent,* | The Honorable Paul A. Felix, Judge |
| v. | The Honorable Todd L. Ruetz, Magistrate |
| Indiana Department of Child Services, | Trial Court Cause Nos. 29C01-1705-JT-654 |
| *Appellee-Petitioner.* | 29C01-1705-JT-655 |
| | 29C01-1705-JT-656 |

**Mathias, Judge.**

[1] F.J. ("Father") appeals the Hamilton Circuit Court's order terminating his parental rights to his three minor children. Father argues that he was denied due process during the termination proceedings and underlying Child in Need of Services ("CHINS") proceedings. He also claims that the Department of Child Services ("DCS") did not present sufficient evidence to support the termination of his parental rights.

[2] We affirm.

## Facts and Procedural History

[3] H.J ("Mother") and Father had three children: A.J. born in July 2003, C.J. born in August 2004, and D.J. born in June 2005 (collectively "the children"). Due to domestic violence in Mother's home and substance abuse, the children were adjudicated CHINS in August 2014.[1] Father's whereabouts were initially not known. On some date prior to a dispositional hearing held on July 6, 2015, DCS learned that Father was incarcerated in Oklahoma.

[4] During the CHINS proceedings, Mother moved from Indiana. She eventually relinquished her parental rights to the children.

[5] Father's initial hearing was held in September 2015, and a CHINS fact-finding hearing was held as to Father on January 7, 2016. Due to Father's incarceration

---

[1] Mother has not seen the children since May 2015. She voluntarily consented to the termination of her parental rights to all three children on May 14, 2018.

and inability to provide the necessary care and supervision for the children, the children remained CHINS.

[6] Father has not seen the children for at least ten years. Father is serving an eight-year prison term in the Oklahoma Department of Corrections, and he remained incarcerated throughout these proceedings. Father does not have a relationship with or bond with the children. DCS encouraged Father to attempt to establish a bond with the children by writing them letters. Father only wrote a few letters, and those letters were not given to the children because they contained promises to the children that Father might not be able to keep. Tr. p. 30. Aside from encouraging communication with the children, DCS could not offer services to Father because he was incarcerated out of state. When he is released from prison, Father plans to live in a trailer he owns in Oklahoma that is not big enough to accommodate the children.

[7] On May 18, 2017, the DCS filed petitions to terminate Father's parental rights to each child. A fact-finding hearing was held on June 6, 2018. On the date of the hearing, two of the three children were in residential treatment because they have special needs. The youngest child was placed in a pre-adoptive home.

[8] At the hearing, Father testified that his earliest possible release date from incarceration is in January 2019. Father also testified that during his incarceration he completed anger management classes, cognitive behavior therapy, and a program titled "Thinking for a Change." He also obtained his GED.

On July 9, 2018, the trial court issued orders terminating Father's parental rights to each of the three children after finding that

> There is a reasonable probability that the conditions that resulted in the Child's removal or the reasons for the placement outside Father's home will not be remedied due to Father's unwillingness to take even the most basic and simple steps towards reunification such as letter writing.
>
> There is a reasonable probability that the parent-child relationship poses a threat to the Child due to Father's lack of involvement in the Child's life both during the underlying CHINS matter and before.
>
> By Father's own testimony, upon his release his plan is to live in Oklahoma in a home that he acknowledges is not big enough for the Child and the Child's siblings.
>
> It is clear to this Court that Father's intent is not to reunify with the Child but instead to have the option to interact with the Child from afar which is not in the best interest of the Child and is not a reason to keep this Child's permanency in limbo and is also not even something that Father has been doing while he has had the chance through something as basic as letter writing.
>
> Termination is in the best interest of the child so that she may be placed for adoption and have permanency in her life. Not only permanency, but also the potential for permanency is greater for the Child with the termination of parental rights.
>
> The DCS has a satisfactory place for the care and treatment of the Child, which is adoption. The guardian ad litem testified that he is in agreement with this plan.

Appellant's App. pp. 35–36.[2] Father now appeals.

## Standard of Review

"We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92–93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

## Due Process

Father argues that DCS and the trial court violated his due process rights throughout the CHINS and termination proceedings. "When the State seeks to

---

[2] The Appellant included the trial court's order terminating Father's parental rights to A.J. in his appendix. The orders terminating Father's parental rights to C.J. and D.J. were not included in the appendix but were submitted with the record on appeal. We cite to the order contained in the appendix because the findings of fact and conclusions of law are the same in all three orders.

terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). "Due Process has never been defined, but the phrase embodies a requirement of 'fundamental fairness.'" *Id.* (citation omitted). "The U.S. Supreme Court has written that 'the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[12] "The process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *Id.* Because both a parent's and the State's countervailing interests are substantial, when faced with a claim of denial of due process in a termination of parental rights, we focus on the second factor, the risk of error created by the State's chosen procedure in the case. *Id.* at 918.

[13] Father argues that the following procedural irregularities denied him due process: 1) DCS's failure to serve him with the CHINS petition by publication pursuant to Trial Rule 4.13 because his whereabouts were initially unknown; 2) the trial court held initial hearings and factfinding hearings beyond the

deadlines proscribed by statute; and, 3) the trial court's failure to order DCS to provide services to Father.[3]

[14] DCS argues that Father failed to raise his due process claims in the trial court, and therefore, his claims are waived. We agree. *See Hite v. Vanderburgh Cnty. Office of Family & Children*, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006) ("It is well established that we may consider a party's constitutional claim waived when it is raised for the first time on appeal.").

[15] However, Father attempts to salvage his claims by arguing that "[i]t was fundamental error for Father to be deprived of his due process in the underlying CHINS and termination cases." Appellant's Br. at 25. Father's only reasoning in support of this argument is that "[t]here is no way to tell at this stage what impact the multiple and ongoing procedural irregularities had on the parties' ability to reunify with the children, to rehabilitate the children with their parents, and to prevent termination." *Id.* at 25–26.

[16] The fundamental error doctrine is a narrow exception to the waiver doctrine and applies to an "error [that] was so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal." *In re G.P.,* 4 N.E.3d 1158, 1167 n. 8 (Ind. 2014). For an appellate court to overturn a

---

[3] DCS's failure to provide services to Father did not violate his due process rights. *See In re J.W., Jr.,* 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015), *trans. denied*.

trial court ruling based on fundamental error, the error must have been "a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *S.M. v. Elkhart Cnty. Office of Family & Children*, 706 N.E.2d 596, 600 (Ind. Ct. App. 1999) (citation omitted).

[17] The proceedings in this case were complicated by the fact that Father's whereabouts were initially unknown because he was incarcerated in Oklahoma, and Mother left Indiana during the CHINS proceedings. As a result, the proceedings were continued on the parties' motions and the court's own motions, several times. Ultimately, Father was served with the CHINS and termination petitions, appeared telephonically at hearings, and had the opportunity to be heard. For these reasons, we conclude that Father has not established that belated service of process or timeliness of the hearings amounts to fundamental error that would allow Father to proceed despite waiver.

## Sufficient Evidence

[18] Father also argues that the evidence is insufficient to support the termination of his parental rights. "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.*

[19] A petition for the involuntary termination of parental rights must allege in pertinent part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[20] DCS must prove that termination is appropriate by a showing of clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). Finally, because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.*

[21] Father only argues that the DCS presented insufficient evidence to prove that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied. However, with regard to each child, the trial court also found that "there is a reasonable probability that the parent-child relationship poses a threat to the Child due to Father's lack of involvement in the Child's life both during the underlying CHINS matter and before." *See* Appellant's App. p. 35. Father does not challenge the sufficiency of the evidence to support this finding, and therefore, he has waived the issue. *See* Appellate Rule 46(A)(8)(a).

[22] Waiver notwithstanding, we observe that to evaluate whether continuation of the parent-child relationship poses a threat to the child, a trial court "should consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation" while also judging a parent's fitness to care for his child as of the time of the termination proceedings. *In re A.P.*, 981 N.E.2d 75, 81 (Ind. Ct. App. 2012). Moreover, the trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before termination of the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

[23] It is undisputed that on the date of the termination hearing, Father had not seen his children for at least ten years. Father abandoned his children, and then on some later date, was incarcerated in Oklahoma. The children are not bonded with Father and require stability that Father is unable to provide.

Finally, we note that Father also does not challenge the trial court's finding that termination of his parental rights is in the children's best interests. And there is ample evidence in the record establishing that termination of Father's parental rights is in the children's best interests.

For all of these reasons, we conclude that the trial court's orders terminating Father's parental rights to his three minor children are supported by clear and convincing evidence.

## Conclusion

Father waived his due process claims, and none of the alleged due process violations rise to the level of fundamental error. In addition, the trial court's orders terminating Father's parental rights to his three children are supported by clear and convincing evidence.

Affirmed.

Vaidik, C.J., and Crone, J., concur.