## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 19 2019, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and Cass County
Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of B.M. (Minor Child)

and

J.M. (Father),

*Appellant-Respondent,*

     v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

December 19, 2019

Court of Appeals Case No. 19A-JT-1870

Appeal from the Cass Circuit Court

The Honorable Stephen R. Kitts, II, Judge

Trial Court Cause No. 09C01-1905-JT-7

**Crone, Judge.**

## Case Summary

[1] J.M. ("Father") appeals the involuntary termination of his parental rights to B.M. ("Child").[1] His sole argument on appeal is that the trial court violated his due process rights by accepting unsworn statements of the guardian ad litem ("GAL") as affirmative evidence in favor of terminating Father's rights. We conclude that Father waived his due process claim and that any alleged error was harmless and not fundamental. Therefore, we affirm.

## Facts and Procedural History

[2] The unchallenged findings of fact show that between 2001 and Child's birth on January 24, 2018, Father had accumulated a series of criminal convictions, including class C felony burglary (2001), class A misdemeanor resisting law enforcement (2001), class D felony possession of methamphetamine (2008), class D felony residential entry (2008), class D felony possession of a controlled substance (2008), and class D felony escape from home detention (2009).[2] While incarcerated in the Department of Correction, Father completed an intensive substance abuse treatment program for methamphetamine users. However, upon his release from prison, he resumed drug use and amassed convictions for class A misdemeanor operating a vehicle while intoxicated (2014), class A misdemeanor battery resulting in bodily injury (2014), level 6

---

[1] B.M.'s mother voluntarily consented to the termination of her parental rights.

[2] The appealed order states that Father pled guilty to the burglary and resisting law enforcement charges in 2002, but his guilty plea is dated July 2001. Ex. Vol. 2 at 9.

felony possession of methamphetamine (2015), class A misdemeanor possession of a synthetic drug or lookalike substance (2015), class B misdemeanor false informing (2016), and class A misdemeanor possession of a synthetic drug or lookalike substance (2017). At the time of Child's birth, Father was serving a four-month sentence in the Cass County Jail for his 2017 conviction.

[3] When Child was born, Child tested positive for methamphetamine and showed signs of withdrawal. The Indiana Department of Child Services ("DCS") assigned family case manager ("FCM") Rachel Clark to the case. By February 1, 2018, Father had been released from jail, and FCM Clark met with Father, Child's mother ("Mother"), and Child. The same day, Father tested positive for synthetic marijuana. The family entered into an informal adjustment ("IA") with DCS. Between February 1 and July 2018, Father failed to comply with the terms of the IA or to participate in services offered to address his substance abuse. Father tested positive for illegal substances including buprenorphine, for which he did not have a prescription, marijuana, and synthetic cannabis, and failed to report for drug screenings. During the IA, the family moved frequently, and FCM Clark often had difficulty locating them. On April 6, 2018, Child tested positive for marijuana. In May 2018, Father was charged with and later pled guilty to level 6 felony operating a vehicle while intoxicated and class A misdemeanor driving while suspended and was sentenced to approximately two and one-half years of incarceration. In July 2018, Father

was charged with and later pled guilty to level 6 felony theft and was sentenced to two years of incarceration.

[4] On September 13, 2018, Child tested positive for methamphetamine. On September 18, 2018, the trial court issued an emergency custody order for Child to be detained, but DCS was unable to locate Mother and Child until September 25, 2018. By this time, Father was incarcerated for his convictions for operating a vehicle while intoxicated and theft.

[5] On September 26, 2018, DCS filed a petition alleging that Child was a child in need of services ("CHINS"). Child was placed with relatives, where he remains. Child's parents admitted that he was a CHINS. Father remained incarcerated during the entirety of the CHINS case. During his incarceration, Father participated in an employment enhancement program, but he was waitlisted for substance abuse classes. The trial court declined to order parenting time for Father because it found that it would not be in Child's best interest to be driven several hours to a secured facility and Child had not been in Father's care for any significant period. Father was offered the opportunity to participate in case planning but was otherwise unable to participate in services due to his incarceration.

[6] On May 2, 2019, DCS filed a petition for the involuntary termination of parental rights. On May 10, 2019, attorney Jeffrey Stanton filed an appearance as the GAL in the termination case. On July 17, 2019, the trial court held a hearing on the termination petition. DCS appeared by its attorney, Father

appeared with his attorney, and GAL Stanton appeared. DCS called FCM Clark to testify. FCM Clark was sworn in and testified from counsel's table. After FCM Clark was questioned by DCS's attorney and Father's attorney, GAL Stanton questioned her. Father was sworn in and testified from counsel's table. He was questioned by his attorney, DCS's attorney, and then GAL Stanton. After Father's attorney indicated to the trial court that he had nothing further, the trial court asked, "Mr. Stanton?" Tr. Vol. 2 at 55. There is no indication in the transcript that GAL Stanton was sworn in before he made the following statement:

> Judge in this case, with regard to [Father], I would concur and suggest that the Court grant the petition for termination of parental rights that's been filed by [DCS]. Uh, much of that is based upon … the time period that we are talking about where [Father] had the opportunity to participate in services was from January 24, 2018 to July of 2018, that did give him the opportunity to take advantage of services. That's about a six (6) month time-frame. The family case manager indicated that there were several opportunities provided to [Father] and that he did not take advantage of those opportunities that were provided to him during that time-frame. I know that six (6) month[s] may not seem like a significate [sic] period of time, however, in six (6) months and when you take into the consideration the fact that services were provided prior to that, that he did not take advantage of, especially for the substance abuse treatment, uh, it certainly seems that [Father] has been given the opportunity. In addition to that, Judge, I would suggest to the Court that [Child] need[s] permanency. I do know that [Father] testified that he may be able to be released from incarceration, if I understood his testimony correctly, in Jan... possibly as early as January of 2020, if I understood correctly. That would still be an additional five (5) or six (6) months from today's date, which would mean that

> [Child] has been absent from [Father's] life, in the sense of any contact, for eighteen (18) months. Uh, and that's assuming that [Father] would be released on that date.

*Id*. at 55-56.

[7] The trial court asked for closing statements. After DCS's attorney and Father's attorney presented their arguments, the trial court asked GAL Stanton if he had anything further. GAL Stanton essentially argued that Father and Child have had no significant relationship for a long period and DCS offered services to Father during the IA, but he did not avail himself of the opportunities provided. *Id*. at 58.

[8] On August 8, 2019, the trial court issued findings of fact and conclusions thereon ("the Order"), finding that there is a reasonable probability that the continuation of Father's relationship with Child poses a threat to Child's well-being, that termination of Father's parental rights is in Child's best interests, and that DCS has a satisfactory plan for Child's care and treatment, that being adoption, and ordering the termination of Father's parental rights. With regard to whether termination is in Child's best interests, the trial court made the following findings:

> 1) Child is now eighteen months of age and has not been in the presence of his father since he was just over five months of age.
>
> 2) Guardian Ad Litem Jeffrey Stanton completed his own independent review of records concerning the child and the child's parents. Believing he possessed adequate information to

form an opinion on whether termination of parental rights would be in the child's best interest, GAL Stanton affirmed that the child's best interest would be served by severing the Father's rights despite a possible release date for father in January 2020, when Child will be twenty four months old and will not have seen Father in over eighteen months.

3) GAL Stanton testified that he has knowledge of Father and a history of involvement in matters involving another of Father's children. GAL Stanton testified that termination is in the child's best interest as Father has a history of opportunities, including opportunities to take advantage of services following the birth of this child, which he refused when he was at liberty to utilize them.

4) The court agrees with GAL Stanton and further notes that when Father has taken advantage of services, including intensive substance abuse services during his previous commitment at the Department of Correction, Father has failed to utilize those services to maintain a drug free lifestyle. Father also testified he was offered services for substance abuse treatment from 2014 until 2017, all of which he refused to participate in or benefit from.

5) This child needs caregivers who are willing and able to provide him with a nurturing environment that is secure and free of abuse and neglect.

6) As this child is of a very young age, this responsibility will be long term and must be permanent.

7) The actions of Father while he was at liberty only demonstrated an unwillingness to parent this child or to provide him with a nurturing, stable, and appropriate environment that children require on a long term basis.

8) In the months leading to his most recent arrest, Father made minimal to no efforts to maintain a suitable home environment for his infant son and it is not in the child's best interest to allow this pattern of behavior to continue.

9) Further efforts to reunite Father and the child would not begin until Father is released from incarceration and despite the best efforts of the Department, the efforts are more than unlikely to succeed given the lengthy and repetitive nature of Father's substance abuse and criminal behavior.

10) It is time for this child to have permanency and not perpetual uncertainty in his life.

11) Permanency alone does not lend the court to find that termination is in the child's best interest. The evidence in this case is that there is more than a need for permanency and in part it is the need for stability and consistency in caregivers that requires this court to terminate the parental rights of Father.

12) Father testified that each of his now seven children, ranging in age from this child, age eighteen months to twenty-four years, have been involved with the Department of Child Services at different times for issues surrounding substance abuse. This includes an involvement that resulted in the termination of his parental rights to another of his children in 2017.

13) The cycle that Father has shown in his own life is not conducive to the life of a small child. It is in the child's best interest to be removed from Father's care on a permanent basis before Child is subjected to the knowledge of the existence of such a cycle which has plagued Father's adult life and, from Father's testimony, has placed each of his seven children in the purview of the Department of Child Services at various times in their lives.

Appealed Order at 7-8.  This appeal ensued.

## Discussion and Decision

[9]     Father seeks reversal of the termination of his parental rights, arguing that the trial court violated his due process rights by relying on GAL Stanton's unsworn statements to conclude that termination of the parent-child relationship is in Child's best interests.  In considering his appeal, we recognize that "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'"  *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016) (quoting *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005)).  "[A]lthough parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities."  *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008).  Involuntary termination of parental rights is the most extreme sanction, and therefore "termination is intended as a last resort, available only when all other reasonable efforts have failed."  *Id*.  Because "the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children," we apply a heightened standard of review to termination proceedings.  *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016) (quoting *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014)).

> In considering whether the termination of parental rights is appropriate, we do not reweigh the evidence or judge witness credibility.  We consider only the evidence and any reasonable inferences therefrom that support the judgment, and give due

regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous. [Ind. Trial Rule 52(A)]. In evaluating whether the trial court's decision to terminate parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment.

*K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229-30 (Ind. 2013) (citations and quotation marks omitted). To the extent that Father does not challenge specific findings of fact, we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) ("Father does not challenge these findings and we accept them as true.").

[10] A petition to terminate a parent-child relationship involving a CHINS must, among other things, allege:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove each element by "clear and convincing evidence." *R.S.*, 56 N.E.3d at 628; Ind. Code § 31-37-14-2. If the trial court finds that the allegations in the petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[11] Father argues that the trial court violated his due process rights by accepting GAL Stanton's unsworn statement as affirmative evidence. Specifically, Father contends that he was denied fair notice that the trial court would accept the GAL's statement as testimony and was denied the opportunity to cross-examine the GAL. Because the trial court included findings based on the GAL's testimony in support of its legal conclusion that termination is in Child's best interests, Father's argument, by implication, calls into question the trial court's conclusion that termination is in Child's best interests.

[12] When determining whether termination of parental rights is in the best interests of a child, the court is required to look at the totality of the evidence. *Z.B. v. Ind. Dep't of Child Servs.*, 108 N.E.3d 895, 903 (Ind. Ct. App. 2018), *trans. denied*. "In so doing, the trial court must subordinate the interests of the parent to those of the child." *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). The juvenile

court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *In re G.H.*, 906 N.E.2d 248, 254 (Ind. Ct. App. 2009). "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010); *see also In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009) ("Permanency is a central consideration in determining the best interests of a child.").

[13] The State asserts that Father waived his due process claim because Father did not object at the termination hearing to the trial court's request for the GAL's opinion or the court's failure to administer an oath to the GAL and further did not request an opportunity to question the GAL. We agree.

[14] A trial court is required to appoint a GAL or a court-appointed special advocate for the child when a parent objects to the termination of parental rights. Ind. Code § 31-35-2-7. The child's GAL is required by statute to "represent and protect the best interest of a child" and to provide the child with services requested by the court, including advocating the child's situation. Ind. Code § 31-9-2-50. A trial court is permitted to call a court-appointed expert as a witness. Ind. Evidence Rule 614(a). All parties are entitled to cross-examine any witness called by the court. *Id*. Further, a party may object to the court's calling a witness. Ind. Evidence Rule 614(c).

In claiming that he was denied fair notice that the trial court would accept the GAL's statement as testimony and was denied the opportunity to cross-examine the GAL, Father paints a distorted picture of the termination hearing. Father asserts that the GAL was acting as an attorney and was not "called to the witness stand," and he attempts to portray the entirety of the GAL's statement as a closing argument.[3] Appellant's Br. at 22. Our review of the transcript shows that FCM Clark and Father both testified from counsel's table; no one took the witness stand. GAL Stanton advocated for Child as expected and required. At the close of DCS's and Father's evidence, the trial court asked the GAL for his opinion. It does not appear to us that the trial court was asking GAL Stanton to present a closing argument at that time. It was only after GAL Stanton provided his opinion that the trial court directed the attorneys to make their closing arguments. It should not have been surprising that the GAL was permitted to question the witnesses and asked by the trial court to provide his opinion on behalf of the Child.

Father could have objected to the trial court's request for the GAL's opinion, but he did not. Father could have objected that the trial court had not sworn in GAL Stanton, but he did not. Father could have asked to question GAL Stanton about his opinion, but he did not. It is well established that "a party on appeal may waive a constitutional claim, including a claimed violation of due

---

[3] We agree with Father that GAL Stanton gave a closing argument after DCS's attorney and Father's attorney presented their closing arguments. However, we reject Father's contention that the trial court considered GAL Stanton's closing argument as substantive evidence.

process rights, by raising it for the first time on appeal." *In re N.G.*, 51 N.E.3d 1167, 1173 (Ind. 2016). And "a parent may waive a due-process claim in a CHINS or termination proceeding by raising that claim for the first time on appeal." *S.E. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 37, 43-44 (Ind. Ct. App. 2014), *trans. denied*; *see also McBride*, 798 N.E.2d at 194 (affirming termination of parental rights and concluding that mother waived claim that her due process rights were violated by numerous alleged deficiencies in CHINS proceedings because she did not raise issue to trial court). Accordingly, Father waived his due process argument.

[17] Father attempts to avoid waiver by claiming fundamental error. The fundamental error doctrine applies to egregious trial errors. *In re Involuntary Termination of Parent-Child Relationship of B.R.*, 875 N.E.2d 369, 375 (Ind. Ct. App. 2007), *trans. denied*. For this Court to overturn a trial court ruling based on fundamental error, the error must have been "a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *S.M. v. Elkhart Cty. Office of Family & Children*, 706 N.E.2d 596, 600 (Ind. Ct. App. 1999) (quoting *Reynolds v. State*, 460 N.E.2d 506, 508 (Ind. 1984)) (emphasis in *S.M.* omitted).

[18] When the trial court asked the GAL for his opinion, both Father and his counsel were present. It was the GAL's duty to advocate for Child, and the trial court was within its authority to call the GAL as a witness. Although it does not appear that GAL Stanton was sworn in, that appears to have been inadvertent. Further, GAL Stanton is an attorney, and "[A]ll attorneys are

officers of the legal system and have a duty of candor toward tribunals." *Brown v. State*, 746 N.E.2d 63, 70 (Ind. 2001) (citing Ind. Professional Conduct Rule 3.3 and Preamble).

[19] Father argues that the trial court relied extensively on GAL Stanton's statement. However, in relation to the lengthy testimony provided by FCM Clark and Father, the GAL's statement was not a major part of the evidence, and the GAL cited and relied largely on the testimony from FCM Clark and Father. The trial court articulated thirty-two findings in support of its conclusion that there is a reasonable probability that the parent-child relationship poses a threat to Child's well-being and thirteen findings in support of its conclusion that termination was in Child's best interest. Of the thirteen findings, only findings 2 and 3 involved GAL Stanton's testimony.[4]

[20] Father does not challenge the findings unrelated to GAL Stanton supporting the trial court's conclusion that termination is in Child's best interests. In addition, Father does not challenge the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being or any of the findings supporting it. This Court has previously found that the same evidence that supported the trial court's determination that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child

---

[4] In finding 4, the trial court stated that it agreed with GAL Stanton, but the remainder of the finding is based on the trial court's own review of the evidence.

supported the court's determination that termination of parental rights was in the child's best interests. *In re A.K.*, 924 N.E.2d 212, 221 (Ind. Ct. App. 2010).

[21]   The unchallenged findings establish that Father has spent much of the past eighteen years committing various crimes, including multiple drug possessions. All seven of his children have been involved with DCS at different times due to his substance abuse issues. Father was offered substance abuse treatment while incarcerated but failed to maintain a drug-free lifestyle after his release. He was offered additional substance abuse treatment between 2014 and 2017, all of which he refused to participate in or benefit from. In Child's case, Father had nearly six months to address his criminal tendencies and his substance abuse issues and failed to do so. The trial court found that "[t]he cycle that Father has shown in his own life is not conducive to the life of a small child" and that it is in Child's best interests to be removed from Father's care before Child is subjected to the cycle that has plagued Father's adult life. Appealed Order at 8. The unchallenged findings clearly support the trial court's determination that termination is in Child's best interests.[5] Accordingly, we cannot say that any error alleged by Father amounts to a clearly blatant violation of basic and

---

[5] Father also asserts that the trial court's findings attributed statements and opinions to the GAL that are not supported by the record. He focuses on two statements: that "the trial court found that the GAL completed his own independent review of records concerning the child and the child's parents" and "the GAL testified that he possessed adequate information to form an opinion on whether termination would be in the child's best interests." Appellant's Br. at 23. We agree that these findings are unsupported by the GAL's statement and therefore are clearly erroneous. However, if the remaining unchallenged findings support the trial court's determination that termination is in Child's best interests, the error is harmless. *See In re B.J.*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008) (erroneous finding is merely harmless surplusage when additional findings, supported by evidence in record, provide sufficient basis for trial court's ultimate conclusion), *trans. denied*.

elementary principles or that the harm or potential for harm resulting from the alleged error is substantial.

[22] Based on the foregoing, we affirm the trial court's decision to terminate Father's parental rights to Child.

[23] Affirmed.

May, J., and Pyle, J., concur.